UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
Indianapolis Division

| | |
|---|---|
| TREVENIA BROWN<br>3848 N 3rd Ave.<br>Unit 3055<br>Phoenix, AZ 85013<br>*Plaintiff*<br><br>v.<br><br>ROBERT WILKIE, SECRETARY<br>U.S. DEPARTMENT OF VETERAN'S AFFAIRS<br>810 Vermont Ave., NW<br>Washington, DC 20420<br><br>*Defendant* | Civil Action No. 1:20-cv-1154 |

## COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff Trevenia Brown ("Ms. Brown" or "Plaintiff") through her attorneys, Clark Law Group, PLLC hereby alleges as follows:

## NATURE OF ACTION

1. This is a challenge to Defendant Department of Veterans' Affairs' ("Defendant") unlawful failure to accommodate Plaintiff's disability and hostile work environment in violation of Section 501 of the Rehabilitation Act of 1973, 29 U.S.C § 701, et seq. ("Rehab Act").

## JURISDICTION AND VENUE

2. All of the allegations contained in the foregoing paragraphs of this complaint are incorporated by reference herein as if the same were set forth at length.

3. This Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and Plaintiff seeks redress for violations of civil rights.

4. This Court may properly maintain personal jurisdiction over Defendant because Defendant conducts business in Indiana.

5. Venue is appropriate because Defendant's acts and omissions occurred in the Division.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. All of the allegations contained in the foregoing paragraphs of this complaint are incorporated by reference herein as if the same were set forth at length.

7. On September 24, 2014, Plaintiff requested a hearing before the U.S. Employment Opportunity Commission ("EEOC") concerning her claims.

8. On July 20, 2015, a hearing was held before an Administrative Judge.

9. On October 9, 2018, the Administrative Judge issued his decision, which Plaintiff timely appealed to the EEOC.

10. On January 14, 2020, the EEOC issued its decision on Plaintiff's appeal.

11. Plaintiff has filed this Complaint within ninety (90) days of receipt of the EEOC's decision.

12. Accordingly, Plaintiff has administratively exhausted and timely filed her claim against Defendant.

## PARTIES

13. All of the allegations contained in the foregoing paragraphs of this complaint are incorporated by reference herein as if the same were set forth at length.

14. Plaintiff is a resident of Arizona.

15. During the events of this Action, Plaintiff was a resident of Indiana.

16. Defendant is the federal agency with is principle office in the District of Columbia.

## FACTUAL ALLEGATIONS

17. All of the allegations contained in the foregoing paragraphs of this complaint are incorporated by reference herein as if the same were set forth at length.

### Background

18. Plaintiff began her employment with Defendant at its Indianapolis, IN location on or about September 25, 2011 as a Veterans Service Representative.

19. Plaintiff was rated a fully successful during the time period of September 2011 through April 2014.

20. In early 2014, Jim Dean was Plaintiff's first level supervisor.

21. In early 2014, Ena Lima was Plaintiff's second level supervisor.

22. In early 2014, Michael Stephens was Plaintiff's third level supervisor and Plaintiff's office Director.

### Plaintiff's Disability

23. Trevenia Brown suffers from the hidradenitis suppurativa.

24. Hidradenitis suppurativa is an incredibly painful medical condition that, when flared, creates painful nodules and cysts on Plaintiff's arms, breasts, and hip/pelvic region so severe that they can be debilitating.

25. During a flare of her hidradenitis suppurativa, Plaintiff is in extreme pain and limited in her ability to walk, bathe, lift, bend, and work.

26. Plaintiff's hidradenitis suppurativa is a disability under the Rehab Act.

## Plaintiff's Needed Accommodation

27. In or around June 2013, Ms. Brown requested and was approved for intermittent leave under the Family Medical Leave Act ("FMLA") for her disability.

28. As time progressed, Plaintiff's disability became more active and painful.

29. The increased severity of Plaintiff's condition forced her to take more and more time off from work, exhausting her leave and needing to seek donated time to cover periods when her condition made it too painful to work.

30. After discussing her treatment plan with her local dermatologist, they decided that the best course of action would be for Ms. Brown to receive treatment from specialist physicians with more familiarity and knowledge of her disability, while also moving to an environment where family would be present to assist her in dealing with the psychological impact of her disability. Thus, both Ms. Brown and her dermatologist agreed that the best course of action would be for her be transferred to Florida.

## The Hardship Transfer Request

31. On January 17, 2014, Ms. Brown requested a transfer to the St. Petersburg, Florida regional office due to a significant hardship ("Hardship Transfer Request").

32. The Hardship Transfer Request stated that Plaintiff's approved FMLA condition was becoming aggravated, making it hard for her to be successful in her career.

33. Although not titled as such, the Hardship Transfer Request was a request for accommodation.

34. Human Resources employee and local reasonable accommodation coordinator Sonya Wilson forwarded Plaintiff's previously submitted FMLA documents to Ms. Lima for her consideration of the Hardship Transfer Request.

35. On or about January 22, 2014, Assistant Service Center Manager Ena Lima told Ms. Brown: "Just because you have a disability, nobody owes you anything. They don't have to do anything" and "You can't go have a meltdown in Human Resources to get moved."

36. Ms. Lima recommended denying the Hardship Transfer Request to Director Stephens.

37. On January 21, 2014, Director Stephens denied the Hardship Transfer Request.

38. Ms. Lima recommended denying the Hardship Transfer Request due to Complainant's performance, low leave balances, and low availability rate due to her FMLA absences.

39. Defendant's policies (and the FMLA) prohibit the consideration of FMLA related absences in employment related decisions.

40. Defendant denied Plaintiff's Hardship Transfer Request without any engagement in the interactive process.

## The Request for Reassignment

41. On or about February 6, 2014, Complainant submitted a request for reassignment for medical reasons to the St. Petersburg, Florida field office ("Request for Reassignment").

42. Although not titled as such, the Request for Reassignment was a request for accommodation.

43. The Request for Reassignment included a letter from Plaintiff's physician, Dr. Robert Huff dated February 7, 2014.

44. Dr. Huff's February 7, 2014 letter described Plaintiff's hidradenitis suppurativa and stated that the condition was chronic, unpredictable, leading to secondary bacterial infections and scarring, causing debilitating pain and psychological impacts, and frequently needing medical and surgical intervention.

45. Dr. Huff's February 7, 2014 letter stated that the transfer of care to an appropriate dermatologist in the St. Petersburg, Florida area is essential to control her disability.

46. On February 10, 2014, Ms. Lima notified Ms. Brown that the Request for Reassignment was denied.

47. Ms. Lima's notification included details about Ms. Brown's disability.

48. Ms. Lima's notification was sent to several individuals who did not have reason to know the details of Ms. Brown's disability, including Yvonne Hamilton, Debra Street, and Adam Kinder.

49. The Request for Reassignment was denied without any engagement in the interactive process.

## The Written Request for Accommodation

50. On February 24, 2014, Ms. Brown submitted VA Form 0857A, Written Confirmation of Request for Accommodation ("Written Request for Accommodation").

51. The VA Form 0857A is not a requirement to engage in the interactive process of accommodation under Defendant's policies.

52. On February 27, 2014, Ms. Brown and her union shop steward Rachel Gentry met with Mr. Dean and Ms. Wilson to discuss Complainant's Written Request for Accommodation.

53. Ms. Gentry observed that Defendant's management was not receptive to Plaintiff's accommodation request, and that it appeared to her that the request would be denied before it was presented.

54. Ms. Gentry observed that Defendant's management treated Ms. Brown in a "dehumanizing manner, and belittled, and almost treated like a child for asking her -- just for asking for a simple request, you know, even just submitting the initial paperwork."

55. Ms. Gentry observed that Ms. Wilson became "hostile" toward Ms. Brown at the February 27, 2014 meeting and Ms. Wilson and Mr. Dean "almost seemed that they just wanted her to accept the fact that they weren't going to be reasonable, or that they weren't going to accommodate her at that point."

56. On March 25, 2014, Mr. Dean asked Ms. Brown for additional medical documents relating to her Written Request for Accommodation.

57. Ms. Brown responded by asking what additional information was needed besides her previously submitted documents.

58. Ms. Brown did not receive a response to her question about what additional information was needed.

59. Defendant did not propose any alternative accommodations to Plaintiff.

60. On April 1, 2014, the Written Request for Accommodation was denied.

61. The stated reason for the denial was that Ms. Brown was not disabled and she did not give sufficient information to determine if Plaintiff was disabled under the Rehabilitation Act.

62. Defendant did not communicate with Plaintiff's medical provider regarding any questions Defendant may have had about Plaintiff's medical condition.

63. Defendant did not ask Ms. Brown what major life activities were difficult to perform in order to assess whether she was disabled.

### Transfer Is Finally Granted in September 2014

64. In or about July 2014, Ms. Brown met with Defendant's human resources representative and local reasonable accommodation coordinator Julie Barret to again request an accommodation.

65. On or about August 21, 2014, Ms. Brown submitted another letter from Dr. Huff to the Agency.

66. Dr. Huff's August 2014 letter, while providing more details than is prior correspondence, was substantially similar as his February 2014 letter, describing Plaintiff's disability and that the transfer of care to an appropriate dermatologist in the St. Petersburg, Florida area is essential to control her disease.

67. Defendant finally transferred Ms. Brown to its St. Petersburg, Florida office in late September 2014.

### Plaintiff's Reprimand

68. On March 11, 2014, Mr. Dean requested that Plaintiff schedule her mandatory overtime hours and days for March 2014.

69. Ms. Brown responded by asking Mr. Dean to use her remaining FMLA hours.

70. Mr. Dean did not apply Ms. Brown's remaining FMLA hours to her mandatory overtime.

71. Instead, Defendant issued Plaintiff a reprimand for supposedly failing to schedule her mandatory overtime.

### COUNT I: FAILURE TO ACCOMMODATE

72. All of the allegations contained in the foregoing paragraphs of this complaint are incorporated by reference herein as if the same were set forth at length.

73. Plaintiff is disabled.

74. Defendant was aware of Plaintiff's disability.

75. On January 17, 2014, Plaintiff submitted her Hardship Transfer Request.

76. The Hardship Transfer Request was a request for reasonable accommodation.

77. Defendant denied the Hardship Transfer Request without any engagement in the interactive process.

78. On or about February 6, 2014, Plaintiff submitted her Request for Reassignment.

79. The Request for Reassignment was a request for reasonable accommodation.

80. Defendant denied the Request for Reassignment without any engagement in the interactive process.

81. On February 24, 2014, Plaintiff submitted her Written Request for Accommodation.

82. On April 1, 2014, Defendant denied the Written Request for Accommodation claiming that Plaintiff was not disabled.

83. Defendant did not identify what additional medical information was necessary from Plaintiff to assist in consideration of the Written Request for Accommodation and did not contact Plaintiff's medical provider to seek additional information.

84. Plaintiff's accommodation requests were not an undue hardship as evidenced by Defendant's later transfer of Plaintiff.

85. Defendant did not engage Plaintiff in the interactive process in good faith.

86. Defendant's failure to accommodate Plaintiff for approximately nine months violated the Rehab Act.

## COUNT II: HOSTILE WORK ENVIRONMENT

87. All of the allegations contained in the foregoing paragraphs of this complaint are incorporated by reference herein as if the same were set forth at length.

88. In response to Plaintiff's accommodation requests, Defendant's management created a hostile work environment to Plaintiff.

89. The hostile work environment included Ms. Lima's negative statement about Plaintiff's disability, Ms. Lima's disparaging comment about Plaintiff having a "meltdown," Defendant's reprimand against Plaintiff, and treatment of Ms. Brown in a dehumanizing and belittling manner.

90. The hostile work environment is further demonstrated by Defendant's prolonged denial of Ms. Brown's multiple accommodation requests, unreasonably lengthy delays in responding to requests for accommodation, and an inadequately explained refusal to grant her requests.

91. Defendant subjected Plaintiff to a hostile work environment because of Plaintiff's disability and/or accommodation requests.

92. Defendant's hostile work environment was severe or persuasive enough to alter the terms or conditions of Plaintiff's employment in violation of the Rehab Act.

## COUNT III: DISCLOSURE OF MEDICAL INFORMATION

93. All of the allegations contained in the foregoing paragraphs of this complaint are incorporated by reference herein as if the same were set forth at length.

94. On February 10, 2014, Ms. Lima disclosed details of Ms. Brown's disability to individuals who had no need to know the details of Ms. Brown's disability.

95. Ms. Lima's disclosure of Ms. Brown's disability was in violation of the Rehab Act.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully requests this Court to enter judgment in her favor and award the following relief:

A. An Order declaring that Defendant's actions and omissions violated Plaintiff's rights under Rehab Act.

B. Award Plaintiff back pay and compensatory damages for her emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses in an amount to be determined by the jury;

C. Award Plaintiff reasonable attorneys' fees and court costs; and

D. Award Plaintiff such other equitable relief as this Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for any and all issues of fact.

Dated: April 6, 2020

Respectfully submitted,

/s/ Denise M. Clark
Denise M. Clark, Esq. (11525-49)
Clark Law Group, PLLC
1100 Connecticut Ave., N.W.
Suite 920
Washington, D.C. 20036
(202) 293-0015
dmclark@benefitcounsel.com