UNITED STATES
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
DETROIT FIELD OFFICE

TREVENIA BROWN,                          )
                                         )
              Complainant,               )
                                         )        EEOC NO.  470-2015-00017X
       v.                                )
                                         )        AGENCY NO:
ROBERT A. MCDONALD, SECRETARY            )        200J-0326-2014101376
DEPARTMENT OF VETERANS AFFAIRS           )
                                         )        TREK K. CARETHERS
              Respondent Agency.         )        ADMINISTRATIVE JUDGE
                                         )
_____ )        DATE:  October 9, 2018

## DECISION

DEF001159

## Introduction

This is the decision in the matter of Trevenia Brown ("Complainant") and Ronald A. McDonald, Secretary, United States Postal Service ("Agency"), EEOC Case No. 470-2015-00017X; Agency Case No. 200J-0326-2014101376.

The Equal Employment Opportunity Commission (EEOC) adjudicates this complaint of workplace discrimination pursuant to 29 C.F.R. § 1614. The applicable statute is Rehabilitation Act of 1973, as amended, 29 U.S.C. 701 *et seq.* (hereafter "Rehab Act").

## Procedural History

Complainant filed a timely hearing request on September 25, 2014. The undersigned Administrative Judge held a hearing on July 20, 2015. The issues that were heard at this hearing were the following:

Whether Complainant was subjected to a hostile work environment based on Disability as evidenced the following events:

1. On January 22, 2014, Complainant's request for a hardship transfer was denied;

2. On January 22, 2014, Ena Lima, Assistant Service Center Manager, told Complainant "Just because you have a disability, nobody owes you anything. They don't have to do anything" and "You can't go have a meltdown in Human Resources to get moved;

3. On February 10, 2014, Complainant's request for reassignment was denied;

4. On March 17, 2014, Complainant received a warning of unacceptable performance;

5. On April 1, 2014, Complainant's request for reasonable accommodation was denied;

6. On April 9, 2014, Complainant was issued a reprimand.

As outlined above, Events 1, 3, 5, and 6 have been accepted for investigation as

1

independent claims, and the overall harassment claim, events 1 through 6, is accepted

for investigation.

The following witnesses testified at the hearing:

> For the Complainant:  Complainant, Dr. Sunil Patel, and Rachel Gentry.

> For the Agency:  Sonya Wilson, Adam Kinder, Ena Lima, Michael Stephens, and

Jim Dean.

## Findings of Fact

Pursuant to 29 C.F.R. 1614.109(g), the following Findings of Fact are entered:

1.  Complainant was employed by the Agency as a Veteran Service Representative ("VSR") beginning on September 25, 2011 and was located at the Indianapolis Regional Office. Complainant's hearing testimony; ROI, pages 3 and 124[1].

2.  Generally, as a VSR, Complainant services connection claims for veterans. As part of her job, she sits at her desk frequently, uses the computer, and sometimes must move case files. ROI, page 126.

3.  Complainant suffered from Hidradenitis Suppurativa.  It is a skin condition characterized by cysts or abscesses on the body.  The condition is very painful and debilitating when an intermittent outbreak occurs.  During an outbreak, her ability to move is severely impaired. It hurts to sit, walk, lift things, bathe, and stoop during a flare up.  It is unpredictable when an outbreak will occur. Complainant's and Hampton's hearing testimony; ROI, page 125.

4.  When Complainant had flare ups of her condition, she was permitted to take leave. Complainant's hearing testimony.

5.  On January 17, 2014, Complainant filed a hardship transfer with Sonya Wilson ("Wilson").  Complainant requested to be transferred to the St. Petersburg Regional Office as a VSR. Complainant's hearing testimony; ROI, pages 127-128.

6.  Complainant wanted the transfer to seek a specialist who treats her condition and to be near her family who could assist her if she had any side effects. Complainant believed her condition impacted her career. Complainant's hearing testimony; ROI, pages 127-128.

---

[1] The page reference refers the Bates stamped number found at the center of the bottom of the page.

DEF001161

7. Ena Lima ("Lima"), Assistant Director, denied her hardship transfer request.[2] Lima cited Complainant's performance.[3] Complainant's, Lima's and Wilson's hearing testimony; ROI, pages 129, 206-208, and 212.

8. Complainant's production had dropped due to FMLA absences. At one point, Complainant was placed on a PIP. Gentry's hearing testimony.

9. Complainant received a "Fully Successful" rating for rating period October 2012 through September 2013. Complainant's hearing testimony.

10. On or about January 22, 2018 Complainant went to Lima to discuss the denial of the hardship request. Complainant questioned Lima about the reason for the denial. Lima stated, "Just because you have a disability, nobody owes you anything. They don't have to do anything" and "You can't go have a meltdown in Human Resources to get moved." Complainant's hearing testimony.

11. On February 6, 2014, Complainant requested a reassignment for medical reasons and attached a letter from her doctor. Complainant's hearing testimony; ROI, page 202 and Ex. 4 to Hearing.

12. Section 9 indicates that Reassignments for Medical Reasons are for reassignments within the employee's service or section. Complainant sought a reassignment outside her service or section. ROI, page 361; Lima's hearing testimony.

13. On February 10, 2014, Lima wrote a memorandum to Complainant denying her request for reassignment. Lima noted that the submitted request did not indicate that Complainant was unable to perform the functions of her job and therefore was "inappropriate." Complainant's hearing testimony; ROI, pages 203-204.

14. Complainant had not identified a specialist for her condition in Florida. Complainant did not look in Indiana for any specialist for her condition. Complainant's hearing testimony.

15. Complainant could perform her normal duties. Complainant's hearing testimony; ROI, page 126.

16. In 2014, employees nationwide such as Complainant were required to sign up for 20 hours of mandatory overtime per month. An email dated January 8, 2014

---

[2] Technically, she made a recommendation and Michael Stephens, the Director, approved the recommendation. Stephens approved the recommendation based on Complainant's performance, although he also looked at her leave. He found that Complainant's quality and production though January 17, 2014 was below standard based upon Aspen data. As a matter of course, all Directors review performance when evaluating hardship transfer requests and it can be a disqualifier. Stephens has denied other requests due to performance and St. Petersburg had denied two other hardship transfer requests despite the individuals having satisfactory performance. Lima's and Stephens' hearing testimony.

[3] Specifically, the performance issue was not meeting performance standards. Lima emphasized that Complainant's leave balance was not a basis. Lima's and Wilson's hearing testimony.

DEF001162

informed all employees, including Complainant, of this requirement. Complainant's, Lima's and Kinder's hearing testimony; ROI, page 269-271.

17. Complainant was warned that her Coach, Jim Dean ("Dean"), the Acting supervisor at the time, had not received her sign up for her mandatory 20 hours of overtime and that she should correct this deficiency.[4]  On February 12, 2014, Dean sent Complainant an email specifically requesting Complainant to submit her overtime dates by the close of business the next day.[5]  Complainant did not meet this deadline.[5]  Complainant was issued a Proposed Reprimand. Complainant's, Lima's, Kinder's, and Gentry's hearing testimony; ROI, pages 266-267 and 272.

18. Proposed Reprimand was not considered discipline. Gentry's hearing testimony.

19. On March 17, 2014, Complainant was issued a Warning for Unacceptable Performance by Donald Young. The Warning discussed Complainant's unacceptable performance measured by her failure to meet her cumulative output goals for December 2013 and January 2014. The output goal for December 2013 was 5.5 and her output was 4.93. The output goal for January 2014 was 5 and her output was 2.56. Dean had spoken to Complainant in December 2013 about her performance deficiencies. Dean's hearing testimony; ROI, page 256.

20. Complainant requested that her FMLA hours were used in place of her mandatory overtime hours. This was not done. Complainant's hearing testimony.

21. On or about February 24, 2014, Complainant submitted a request for accommodation to be permitted to transfer to St. Petersburg Regional Office. Complainant's and Lima's hearing testimony; ROI, page 248.

22. On February 27, 2014, an interactive meeting was held to discuss the request for accommodation. In attendance was, Dean, Rachel Gentry, Complainant, and Wilson. Sonya Wilson explained the situation and provided examples of reasonable accommodation to Complainant. During the meeting, Complainant was told she needed additional medical information for the Agency to make a decision. Brown could not identify any parts of the job she could not do when her condition was not active. She was given form 0857e to fill out. Complainant was asked if she had an interim request for accommodation and Complainant did not identify one. Complainant only wanted a transfer. Complainant's, Wilson's, Dean's, and Gentry's hearing testimony; ROI, pages 247 and 253.

23. On March 25, 2014, Complainant was asked in an email had she gathered the additional medical documentation required. Complainant felt she already provided

---

[4] Dean had informed all employees, including Complainant, in team huddles of the requirement to sign up for mandatory overtime. Everyone complied except for Complainant. Dean's hearing testimony.

[5] Complainant had not provided dates to Dean from January 8. 2014 to February 24, 2014. Dean's hearing testimony.

DEF001163

sufficient medical information via her FMLA paperwork. Complainant's and Wilson's hearing testimony.

24. Complainant sent an email to Wilson stating she was not going to provide any more medical information and the reasonable accommodation decision should be based on her FMLA paperwork.[6] Wilson's hearing testimony.

25. On or about April 9, 2014, Lima informed Complainant of the denial of her reasonable accommodation request. Both Lima and Wilson stated she should and could take leave to get any necessary treatment. Complainant's and Wilson's hearing testimony; ROI, pages 135 and 245.

26. Complainant was never disciplined for using leave. Dean's hearing testimony.

27. The Agency stated that her request for reasonable accommodation was denied because her documentation did not establish she had a disability under the Rehab Act. The Agency further stated that no limitation was identified that was not already being accommodated; her pain was already accommodated.  The Agency reaffirmed if she needed to see a specialist outside of the commuting area she could request leave.[7] ROI, page 245; Wilson's hearing testimony.

28. Reassignment is the reasonable accommodation of last resort under the Agency's policies.  It would only be considered if there is no other accommodation available that will enable the employee to perform the essential functions of her job. Wilson's hearing testimony; ROI, pages 345-346.

29. Complainant believed no accommodation would solve her problem except for a transfer to Florida. Complainant rejected a chair or additional breaks as a form of reasonable accommodation.  Complainant believed looking for a specialist in Indianapolis would be pointless as she needed her family. Complainant's hearing testimony.

30. On or about April 9, 2014, Acting Veterans Service Center Manager Adam Kinder imposed the reprimand that was previously proposed. Complainant's hearing testimony; ROI, page 257.

31. Complainant received a Fully Successful rating for the period October 1, 2013 through September 30, 2014.  The Rating did note specific performance deficiencies however. ROI, page 297.

32. On October 6, 2014, Complainant transferred to St. Petersburg, FL. Complainant was approved for the request back in May 2014. Complainant's and Stephens' hearing testimony.

---

[6] The FMLA paperwork indicated that Complainant suffered from intense pain which the Agency was already accommodating. Wilson's hearing testimony.

[7] Wilson told her the Agency would grant liberal leave. Wilson's hearing testimony.

DEF001164

## Conclusions of Law

## Legal Standards of Hostile Work Environment Based on Disability

In order for the Complainant establish that a hostile work environment existed, he must show that:

a.   She belongs to a statutorily protected class;

b.   She was subjected to unwelcome harassment;

c.   The harassment complained of was based on her disability;

d.   The harassment affected a term or condition of employment and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile or offensive work environment; and,

e.   There exists some basis for liability on the part of the employer.

See Humphrey v. U.S. Postal Serv., EEOC Request No. 01965238 (October 16, 1998) (quoting Henson v. City of Dundee, 682 F.2d 897, 903-05 (11th Cir. 1982) and 29 C.F.R. 1604.11); See also Fennell v. Small Bus. Admin., EEOC Request No. 01A04742 (June 21, 2001); Rabidue v. Osceola Refining Co., 805 F.2d 611 (6th Cir. 1986). Whether the harassment is severe or pervasive enough to trigger a statutory violation must be determined by looking at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." See Harris v. Forklift Sys. Inc., 510 U.S. 17, 21, 23 (1993). The conduct complained of must be objectively and subjectively offensive and hostile or abusive from the perspective of a reasonable person. The victim must also perceive the conduct to be hostile or abusive. Id. at 21. "'Simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions' of employment." See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

6

DEF001165

**Legal Standards for Disparate Treatment Based on Disability**

For the Complainant to establish that she was discriminated against because of her disability where direct evidence does not exist, she must establish that:

1.   She was disabled as defined by the Rehabilitation Act of 1973, as amended;

2.   She was subjected to an adverse action; and,

3.   She was treated less favorably than similarly situated individuals not in the Complainant's protected class.

See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142 (2000); See also *Complainant v. United States Postal Serv.*, EEOC Appeal No. 0120140560 (April 9, 2014).

**Legal Standards for Establishing the Protected Basis Disability**

Pursuant to the Rehabilitation Act Amendments of 1992, the employment standards of the Americans with Disabilities Act (ADA) apply to all non-affirmative action employment discrimination claims filed by federal applicants or employees with disabilities under section 501 of the Rehabilitation Act.  Pub. L. No. 102-569 § 503(b), 106 Stat. 4344 (1992) (codified as amended at 29 U.S.C. § 791(g) (1994)); See also *Lorenzo v. U.S. Postal Serv.*, EEOC Appeal No. 01973337, *7 n. 3 (May 25, 2000). Moreover, the ADA Amendments Act of 2008 ("ADAAA"), which took effect on January 1, 2009, expressly applies to the Rehabilitation Act.  Pub. L. No. 110-325, 122 Stat. 3553 (2008) at § 7.

EEOC regulations envision the Federal government as a model employer of individuals with disabilities.  See 29 C.F.R §1614.203(a); See also *Gardner v. Morris*, 752 F.2d 1271 (8th Cir. 1985) and *Prewitt v. United States Postal Serv.*, 662 F.2d 292, 301-02 (5th Cir. 1981).  Federal agencies are prohibited from discriminating against qualified

7

individuals with a disability. An Agency must give full consideration to the placement and advancement of a qualified individual with a disability. *See* 29 C.F.R. §1614.203(b). The Agency shall make reasonable accommodations to the known physical or mental limitations of a qualified employee with a disability unless the Agency can demonstrate that the accommodation would impose an undue hardship on the operation of its program. *See* 29 C.F.R. §1614.203(c). A qualified employee with a disability is one who can perform the essential functions of the position in question with or without reasonable accommodation. *See* 29 C.F.R. §1614.203(a)(6).

The threshold issue in determining if the Agency has violated the Rehabilitation Act is whether the Complainant had a disability as defined by the act. Pursuant to the ADA Amendments Act, "disability" under the ADA is now defined as: (1) a physical or mental impairment that substantially limits a major life activity; or (2) a record of a physical or mental impairment that substantially limited a major life activity; or (3) being regarded as having such an impairment, now redefined in the statute as when a covered entity (e.g., an employer) takes an action prohibited by the ADA based on an actual or perceived impairment whether or not the impairment limits or is perceived to limit a major life activity. *See* 42 U.S.C. §§ 12102(1) and (3)(A), as amended.

The ADA Amendments Act ("ADAAA") expanded the definition of major life activities to include "major bodily functions." *See* 42 U.S.C. § 12102(2)(B), as amended. The ADAAA lists examples of major life activities, many of which are found in EEOC's 1991 regulations implementing Title I of the ADA, court cases and prior EEOC enforcement guidance. Examples of major life activities provided in the ADAAA include caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking,

8

DEF001167

standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. Id. Examples of "major bodily functions" provided in the ADAAA include functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, circulatory, respiratory, endocrine, and reproductive functions. Id. The examples in the statute are non-exhaustive. An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability. See 42 U.S.C. § 12102(4)(C).

Several factors are used to determine whether an individual's impairment substantially limits a major life activity. These factors are:

1)    The nature and severity of the impairment;

2)    The duration or expected duration of the impairment; and

3)    The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

See 29 C.F.R. §1630.2(j)(2).

Specifically, the ADAAA expressly provides: an impairment may "substantially limit" a major life activity even if it does not prevent, or severely or significantly restrict, a major life activity, 42 U.S.C. § 12102(4)(B); major life activities include "major bodily functions," 42 U.S.C. § 12102(2)(B); and, an impairment that is episodic or "in remission" is a disability if it would substantially limit a major life activity when active, 42 U.S.C. § 12102(4)(D). Generally, "substantially limiting" means: "unable to perform a major life activity that the average person in the general population can perform; or, as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity. See 29 C.F.R.

9

DEF001168

1630.2(j)(1).

An individual with a disability is qualified if he can perform the essential functions of the position in question with or without reasonable accommodations. *See* 29 C.F.R. §1614.203; *See also Prewitt v. United States Postal Serv.*, 662 F.2d 292 (5th Cir. 1981). The Complainant has the burden of establishing that he is an "individual with a disability." *See Jasany v. United States Postal Serv.*, 755 F.2d 1244 (6th Cir. 1985); *See also Lawson v. CSX Transp., Inc.*, 245 F.3d 913 (7th Cir. 2001). A "qualified individual with a disability" is an individual with a disability who satisfies the requisite skill, experience, education and other job related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of the position. *See* 29 C.F.R. §1630.2(m). The term "position" is not limited to the position held by the employee, but also includes positions that the employee could have held because of reassignment. Therefore, in order to determine whether Complainant is "qualified," the fact finder must assess whether, with or without accommodation, Complainant could perform the essential functions of any position that s/he could have held because of job restructuring or reassignment. *See Prioleau v. United States Postal Serv.*, EEOC Appeal No. 07A40021 (May 9, 2005); *Hawkins v. United States Postal Serv.*, EEOC Appeal No. 03990006 (February 11, 1999).

## Legal Standard for Similarly Situated Employees

It is well established that in order for two or more employees to be considered similarly situated, all relevant aspects of the employees' work situation must be identical or nearly identical. *See Ochoa v. United States Postal Serv.*, EEOC Appeal. No. 0320110005, *5 (September 27, 2012). To be "similarly situated," the employee with

10

whom the Complainant seeks to compare herself must have reported to the same supervisor, been subject to the same standards governing discipline, and engaged in the same conduct without differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *See Dfelio v. Soc. Sec. Admin.,* EEOC Appeal. No. 0320120013, \*5 (June 5, 2012) (*citing Jones v. Dep't of the Interior,* EEOC Appeal No. 05950175 (June 7, 1996)).

**<u>Legal Standards for Pretext</u>**

Once the Complainant established a *prima facie case* of harassment or retaliation, the burden shifts to the Agency to articulate a legitimate, non-discriminatory reason for its action(s). Once the Agency establishes its reasons for its decisions and/or actions, the burden shifts back to the Complainant to show that the Agency's articulated reason is not true but a pretext for discrimination. *See Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248 (1981). The Complainant then has the burden of showing that the Agency's articulated business reason is not worthy of belief but is a pretext for discrimination. *Id* at 253. However, the fact finder is not required to find discrimination whenever it finds that the Agency's explanation for its actions is not credible. Rather, the fact finder may find discrimination in these circumstances if it finds that discrimination was the motivation for the employer's actions. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502 (1993); *See also Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 144 (2000) (applying *McDonnell Douglas* paradigm to private sector ADEA claim) (*quoting Burdine,* 450 U.S. at 253).

The Complainant has the burden to show that the Agency's reasons were not true but a pretext for a discriminatory motive. Mere conjecture that an employer's explanation

11

is a pretext for discrimination is insufficient to establish pretext. *See Bell v. United States Postal Serv.*, EEOC Appeal No. 0120101282, *3 (July 2, 2010); *McDermott v. United States Postal Serv.*, EEOC Appeal No. 0120083008 (October 2, 2008); *See also Erby v. United States Postal Serv.*, EEOC Appeal No. 0120064377 (Feb. 12, 2008) (concluding that appellant's bare assertions are insufficient to overcome the Agency's legitimate, nondiscriminatory reasons).

Where the Agency has articulated a legitimate, nondiscriminatory reason for its action, the analysis can go directly to the ultimate issue of whether the Complainant can show that the Agency's actions were motivated by discrimination. *See Complainant v. Dep't of Defense*, EEOC Appeal No. 0120112815, *3 (August 14, 2014); *Cinalli v. Soc. Sec. Admin.*, EEOC Appeal No. 01986486 (May 22, 2000).

<u>Analysis</u>

The Complainant alleged she was harassed and discriminated against because of her disability. However, Incident #2 was not a hostile act and therefore does not support a hostile work environment. Likewise, Incidents ##1,3, and 6 also cannot support a hostile work environment. For Incident #5, the Agency did not deny the Complainant a reasonable accommodation. Pretext cannot be shown for any of the Incidents. Consequently, Complainant's Complainant will be dismissed.

I. **Incident #2 Was Not a Hostile Act That Would Support a Hostile Work Environment**

Complainant has alleged an event that was not hostile and could not support a hostile workplace claim. The conduct complained of must be objectively and subjectively offensive and hostile or abusive from the perspective of a reasonable person. *See Harris*

*v. Forklift Sys. Inc.*, 510 U.S. at 21.  In Issue 2, Complainant alleged that Lima stated the following:

> Just because you have a disability, nobody owes you anything. They don't have to do anything and You can't go have a meltdown in Human Resources to get moved.

I find this statement by Lima to be a simple truism and not a harassing, severe, or hostile act.  In the context of the conversation, Complainant was requesting a hardship transfer in the Human Resources Office and was particularly upset by its denial.  In response, Lima made the statement.  A reasonable person viewing the comment would not find it offensive.  The comment is essentially stating that special treatment would not be afforded and bad behavior would not change the decision.  At most the comment may have been unpleasant to hear as Complainant was not getting the result she wanted however this does not constitute a severe, hostile, or harassing event.  The language used was not particularly abusive, threatening, and lacked any obscenities or demeaning language. Petty slights, minor annoyances, and simple lack of good manners occur in the workplace. Not every unpleasant or undesirable act which constitutes a discrimination violation. *See Shealey v. Equal Employment Opportunity Commission*, EEOC Appeal No. 0120070356, 2011 EEOPUB LEXIS 948 (Apr. 18. 2011) (*citing Epps v. Dep't of Transp.*, EEOC Appeal No. 0120093688, 2009 EEOPUB LEXIS 3519 (Dec. 19. 2009).  I find this allegation cannot support a hostile work environment.

## II.  Incidents ##1,3, and 6 Cannot Support a Hostile Work Environment Claim

Likewise, Incidents ##1,3, and 6 cannot support a hostile work environment. Each of these Incidents involve a discrete act.  Courts defined such "discrete discriminatory acts" to include acts such as termination, failure to promote, denial of transfer, or refusal to hire, acts that constitute separate actionable unlawful employment practices. *See*

13

*Lynnette v. Dep't of Veterans Affairs*, EEOC Appeal No. 0120152061 (October 29, 2015). A denial of a transfer, Incident #1, denial of a request for reassignment, Incident #3, and the issuance of a reprimand, Incident #6, are all discrete acts.  A discrete act may be part of a hostile work environment only if it is related to abusive conduct or language. *See Rotarius v. Dep't of Treasury*, EEOC Appeal No. 01A45118 (March 29, 2006) (*citing Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)).  I find none of these Incidents involved abusive conduct or language.  Consequently, these three Incidents cannot support a hostile workplace claim.

## III.   No Reasonable Request for Accommodation Was Denied

As the part of the Complainant's hostile workplace claim, she alleged that the Agency denied her a reasonable accommodation for her disability.  To establish a prima facie case of a failure to accommodate claim, the Complainant must establish that the Agency failed to offer a reasonable accommodation. *See Underwood v. Soc. Sec. Admin.*, EEOC Doc. 0720120001, *5 (January 18, 2013).   Complainant's disability was Hidradenitis Suppurativa.  When this condition "flared up," Complainant was debilitated. When the condition was not active, Complainant was able to perform all the essential functions of her position.   Complainant requested a very specific accommodation, a transfer to the Agency's St. Petersburg, Florida location.  No other accommodation would be accepted by the Complainant.   An employee must show a nexus between the disabling condition and the requested accommodation. *See Hampton v. U.S. Postal Serv.*, EEOC Appeal No. 01986308 (July 31, 2002) (*citing Wiggins v. U.S. Postal Serv.*, EEOC Appeal No. 01953715 (April 22, 1997)).  In this case, Complainant explained she wanted to go to St. Petersburg because her current doctor could not treat her condition. However, Complainant admitted that she did not look in Indianapolis to see if there was

14

a specialist who could treat her condition. Further, Complainant admitted that she had not even identified a specialist in St. Petersburg who could treat her condition. Hence, Complainant had not shown a nexus between her disabling condition and her requested accommodation, i.e. she did not establish that the requested accommodation would be effective, or otherwise solve her problem. I find that when Complainant suffered from a flare up of her condition, there was no reasonable accommodation the Agency could offer that would permit her to perform the essential functions of her job or any job. In fact, the Complainant sought or desired no other accommodation. An agency is not required to provide Complainant with the exact accommodation she requests -- the employer may choose among reasonable accommodations, so long as the chosen accommodation is effective. *See Allen v. United States Postal Serv.*, EEOC Appeal No. 01A23292. *3 (October 23, 2003). The Agency offered the Complainant liberal leave during her flare ups so she could go to any doctor's appointment she may have. Permitting the use of accrued paid leave or unpaid leave is a form of reasonable accommodation. *See Servold v. Dep't of Homeland Sec.*, EEOC Doc. No. 0120081296, *6 (July 27, 2012); *See also Complainant v. United States Postal Serv.*, EEOC Doc. 0120132469 (October 22, 2013) (Employer offer of leave, including Family Medical Leave Act leave, was a reasonable accommodation). I find given the facts in this case, Complainant was not denied a reasonable accommodation.[8]  Consequently, this Incident cannot support a hostile workplace claim.

---

[8] It should be noted that ultimately the Agency permitted Complainant to transfer to St. Petersburg as a reasonable accommodation.

DEF001174

IV.   **No Pretext Established that Agency's Actions Were Due to Harassment or Discrimination**

Finally, Complainant failed to establish that any of the Agency's actions were a pretext for disability harassment or discrimination. Pretext can be shown where evidence is sufficient to show that the Agency's articulated reason is unworthy of belief and a pretext for harassment or discrimination. *See Complainant v. Dep't of Justice*, EEOC Appeal No. 0120121339 (May 8, 2015). For Incident #1, denial of a request for a hardship transfer, the Agency stated that this request was denied due to performance. Although Complainant received a "Fully Satisfactory" for the time covering the Complainant's request for hardship transfer, that performance review noted specific performance deficiencies.   The Agency established that Complainant's overall production numbers were down during the time in question.  The Complainant argued that this was due to her time off however, it did not change the fact that her numbers were down and that the Agency specifically pointed out this deficiency.  Complainant did not present any evidence that the Agency's position was due to her disability.  I find pretext was not established for this Incident.

For Incident #3, denial of request for reassignment, the Agency stated the denial was   because the documents submitted by the Complainant did not warrant a reassignment, namely because the documents did not establish that she could not perform the essential functions of her position.  Further, reassignments for medical reasons were handled within the employee's service or section pursuant to Section 9. Complainant was seeking a medical reassignment outside of her service or section. There was no evidence presented disputing these assertions.  There was no evidence

16

that the medical transfer was due to her disability. I find pretext was not established for this Incident.

For Incident #4, the issuance of a warning for unacceptable performance, the Agency articulated that Complainant was issued this because her performance in December 2013 and January 2014 did not meet her performance goals. For both months, the Agency presented proof of her failure to meet these objective output goals. Complainant did not dispute her failure to meet these goals. There was no evidence that the Agency issued this warning due to her disability. I find pretext was not established for this Incident.

For Incident #6, the issuance of a reprimand, the Agency stated that the reprimand was issued due to Complainant's failure to timely sign up for mandatory overtime in February 2014 even after prodding by her supervisor to do so. Complainant argued that her FMLA hours should have been used for this mandatory overtime. The parties dispute whether Complainant made this request. I find that she did. However, this finding does not establish that disability animus was the motivating factor for this reprimand. The Agency attempted to get Complainant to comply with the mandatory OT requirement and that it simply did not write her up. This behavior does not seem consistent with an animus. I find that animus because of disability did not exist. Therefore, I find pretext was not established for this Incident.

## Conclusion

For the foregoing reasons, a finding is issued that the Agency did not harass or discriminate against Complainant because of her disability for the Issues Accepted in this case. Accordingly, judgment will be entered in favor of the Agency for these claims.

17

DEF001176

It is so ORDERED.

_Trek K. Carethers_

Digitally signed by Trek Carethers
DN: cn=Trek Carethers, o=EEOC,
ou=Federal Hearings,
email=trek.carethers@eeoc.gov,
c=US
Date: 2018.10.08 19:07:10 -04'00'

TREK K. CARETHERS
ADMINISTRATIVE JUDGE

DEF001177