UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TREVENIA BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No: 1:20-cv-01154-JPH-MJD |
| ) | |
| ROBERT WILKIE, SECRETARY OF THE ) | |
| UNITED STATES DEPARTMENT OF ) | |
| VETERANS AFFAIRS, ) | |
| ) | |
| Defendant. ) | |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Ms. Brown cannot prevail on her allegations of failure to accommodate, hostile work environment, or unauthorized disclosure of medical information. This Court should grant summary judgment to the VA.

**I.   Plaintiff's Opposition Brief Exceeds the Page Limitations of Local Rule 7-1**

Local Rule 7-1 limits summary judgment briefing (supporting and response) to 35 pages.[1] S.D. Ind. L.R. 7-1(e)(1). Whereas Defendant's brief in support of its motion for summary judgment was just 27 pages, Ms. Brown's Response in Opposition to Defendant's Motion for Summary Judgment is 46 pages, *i.e.,* over 30% overweight. [Filing No. 44; Filing No. 40.] Ms. Brown did not request this Court's permission to exceed the standard limits (nor is there any reason to, given the brevity of Defendant's brief and the handful of issues in this case). This Court has previously emphasized the "seriousness" of these page limitations. *E.g., Billings v.*

---

[1]   This Court's Practices and Procedures permit lengthier briefs where the parties submit cross-motions for summary judgment. *See* Practices and Procedures for Judge James Patrick Hanlon, § II.C.2. Those provisions do not apply because Ms. Brown has not cross-moved for summary judgment. [*See* Filing No. 40 at 1 n.1; Filing No. 44.] The standard page limits govern.

*RYZE Claim Sols., LLC*, No. 1:18-CV-01767-JMS-MJD, 2019 WL 2514769, at *2 (S.D. Ind. June 18, 2019). Ms. Brown's brief flouts them.

If the Rules have any teeth at all, this Court should disregard the overlong portion of Ms. Brown's brief. Ultimately, though, even if this Court considers all of Ms. Brown's arguments, she still has not shown a genuine issue of material fact on any of her claims.

## II.     Reply in Support of Defendant's Statement of Material Facts Not in Dispute

**Defendant's Statement ¶¶ 26–28.**  Ms. Brown's suggestion that she never displayed performance deficiencies is inaccurate. The Warning of Unacceptable Performance issued to her on March 17, 2014, suggested placing her on a Performance Improvement Plan based on her ongoing failure to meet the output goals for her position. [Filing No. 39-27; *see also* Filing No. 39-30 at 1 & 2.] In any event, the purpose of this restriction in the Guidance for Hardship Transfers is to ensure that area offices do not transfer low-performing employees to other locations [*see* Filing No. 39-10] and thus, as Ms. Lima expressed, this Guidance indicated to the VA that it would not be appropriate to transfer Ms. Brown given that her "demonstrated performance in the VSR position" did not meet expectations. [Filing No. 39-12.]

**Defendant's Statement ¶ 40.**  The section of the VA Handbook that Ms. Brown cites concerns requests for accommodation. [Filing No. 43-6 at 16 & 25.] The Request for Reassignment was a request under the union master agreement, not a request for accommodation, and thus did not implicate this provision. [Filing No. 39-14 (Request for Reassignment, Pl. Dep. Ex. 5).]

**Defendant's Statement ¶ 51.**  Ms. Brown's brief argues that she did not receive VA Form 0857e during the interactive meeting. [Filing No. 44 at 18.] Yet Mr. Dean's recap of the interactive meeting, which was sent immediately after the interactive meeting occurred on February 27, 2014, specifically documented that he "gave [Ms. Brown] VA Form 0857e Request

2

for Medical Documentation." [Filing No. 39-20.] There is no dispute that, as of this email, Ms. Brown knew that the VA wanted her to provide the information in this form.

**Defendant's Statement ¶¶ 69 & 70.**  Ms. Brown argues that decisions by the EEOC are subject to de novo review. [Filing No. 44 at 24–25.] That's true, but it does not support Ms. Brown's objection. "Prior administrative findings with respect to an employment discrimination claim may, of course, be admitted as evidence at a federal-sector trial de novo." *Chandler v. Roudebush*, 425 U.S. 840, 863 n.39 (1976) (citing Fed. R. Evid. 803(8)). Federal courts "routinely cite to EEOC findings and related proceedings in ruling on motions for summary judgment in Title VII discrimination and retaliation cases." *Salak v. Pruitt*, 277 F. Supp. 3d 11, 19 n.8 (D.D.C. 2017), *aff'd sub nom. Salak v. Wheeler*, No. 17-5231, 2018 WL 4148517 (D.C. Cir. Aug. 1, 2018) (citations omitted). *See also DeCorte v. Jordan*, 497 F.3d 433, 440 (5th Cir. 2007); *Brooks v. Firestone Polymers*, LLC, 70 F. Supp. 3d 816, 828 n.3 (E.D. Tex. 2014), *aff'd sub nom. Brooks v. Firestone Polymers, L.L.C.*, 640 F. App'x 393 (5th Cir. 2016); *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 887 (S.D. Tex. 2010). That is because, federal courts have recognized, EEOC decisions—like the one cited in Defendant's Statement—contain "highly probative information, including 'findings of fact made from accounts by different witnesses' and 'subjective commentary on the credibility of those witnesses.'" *Walia v. Potter*, No. C09-1188JLR, 2012 WL 12977878, at *1 (W.D. Wash. Dec. 17, 2012) (quoting *Smith v. Universal Servs., Inc.*, 454 F.2d 154, 157 (5th Cir. 1972)). The EEOC Decision is relevant evidence that this Court should consider in reaching its determination on summary judgment.

### III. Opposition to Plaintiff's Statement of Additional Material Facts

**PSMF 2.** *According to the Defendant's Accommodation Policy, the local reasonable accommodation coordinator "LRAC" should have been consulted when evaluating an employee's accommodation request. [Dkt. 41-7, Dep. of Sonya Robertson 18:10-22:2].*

**Defendant's Objection:** To the extent Ms. Brown intends this paragraph to establish that the Hardship Transfer Request was a request for accommodation, that is belied by the plain language of the request. The LRAC at the time, Sonya Wilson,[2] processed the Hardship Transfer Request as a hardship transfer request because Ms. Brown clearly identified it as a "request[ for] a transfer to the St. Petersburg, FL Regional Office due to a significant hardship." [Filing No. 39-9 (Hardship Transfer Request, Pl. Dep. Ex. 3); *see also* Filing No. 43-7 at 11 (Wilson Dep. at 38:14–39:5).]

**PSMF 7.** *When Ms. Brown submitted her Hardship Transfer Request to Ms. Wilson, Ms. Brown stated that she needed an accommodation for her medical condition. [Dkt. 39-2, Brown Tel. Aff., 21:10-19]; [Dkt. 39-4, EEOC Tr. Vol. 1, 48:21-49:2, 49:20-50:21, 51:4-6].*

**Defendant's Objection:** This is directly undermined by Ms. Brown's own testimony at the EEOC hearings. When asked by her counsel, "Did you say you wanted an accommodation?," Ms. Brown responded:

> ***I don't remember saying I wanted an accommodation***. I did tell her that I was having medical problems. I was having issues with my disability that was affecting my job, and that I needed -- my request was -- that I felt that would help me, would be to transfer to St. Petersburg Regional Office to be with my -- close to my family.

[Filing No. 39-4 at 49–50 (EEOC Tr. Vol. I at 48:18–49:2) (Brown's testimony) (emphasis added).] Ms. Brown went on to testify that she specifically told Ms. Wilson "that [she] ***needed a hardship transfer***." [*Id.* at 50 (EEOC Tr. Vol. I at 48:18–49:2) (emphasis added).]

---

[2]   Ms. Wilson's current name is "Sonya Robertson." [Filing No. 43-7 at 2 (Wilson Dep. at 5:10–15).]

**PSMF 10.** *Dr. Huff's February 7, 2014 letter stated that the transfer of care to an appropriate dermatologist in the St. Petersburg, Florida area is essential to control her disease. Id.*

**Defendant's Objection**: To the extent Ms. Brown's statement is suggesting that she could only receive treatment for this condition in Florida, Ms. Brown is distorting Dr. Huff's words. Dr. Huff wrote that "upon relocation" Ms. Brown would need to find an appropriate dermatologist for her condition, not that relocation to Florida was essential to control her disease. [Filing No. 39-15.] By all accounts, Ms. Brown made no effort at all to find a hidradenitis suppurativa specialist who was located in Indiana. [Filing No. 39-1 (Pl. Dep. at 47:5–49:16).] As the EEOC AJ emphasized, Ms. Brown "did not look in Indiana for any specialist for her condition." [Filing No. 39-3 at p. 3 (Finding of Fact ¶ 14).]

**PSMF 15.** *Ms. Wilson did not ask to speak with Ms. Brown's provider to learn more information about Ms. Brown's condition or accommodation request. [Dkt. 39-5, EEOC Tr. Vol. II, 437:4-8].*

**Defendant's Objection:** The VA specifically and repeatedly requested that Ms. Brown ask her physician to provide medical documentation, but Ms. Brown did not do so. [Filing No. 39-1 (Pl. Dep. at 77:2–78:7); Filing No. 39-21 (VA Form 0857e, Pl. Dep. Ex. 10); Filing No. 39-22 (Pl. Dep. Ex. 11).]

**PSMF 17.** *Defendant's policy states: "If the information provided by the requestor's health. care professional is insufficient to enable an informed determination, additional information may be requested, but only after obtaining agreement from the LRAC [Local Reasonable Accommodation Coordinator] at the next higher organizational level (e.g., VISN level). In this instance, the LRAC should explain to the requestor why the submitted documentation is insufficient, identify the information that is needed, and allow the requestor an opportunity to provide the information." [Dkt. 41-5, VA 5975.1, 23].*

**Defendant's Objection:** Ms. Brown misconstrues the policy. This portion of the VA Handbook specifically provides that requests for medical documentation in relation to reasonable accommodation requests should be "limited to the questions on VA Form 0857e." [Filing No. 43-6 at 23.] The VA complied with that policy by providing the form; Ms. Brown

5

apparently did not pass it along to her physician. [Filing No. 39-1 (Pl. Dep. at 77:2–78:7); Filing No. 39-21 (VA Form 0857e, Pl. Dep. Ex. 10); Filing No. 39-22 (Pl. Dep. Ex. 11).] Since Ms. Brown never submitted the information on Form 0857e, the provision for requesting "additional information," as stated in the section of the Handbook that Ms. Brown quotes here, was never activated. [Filing No. 43-6 at 23.]

**PSMF 20.** *On April 9, 2014, Ms. Brown was rated fully successful for the evaluation period of October 1, 2013 to April 5, 2014. [Dkt. 41-2, 2014 Midyear Appraisal, 5].*

**Defendant's Objection:** This performance evaluation specifically noted that Ms. Brown fell well below the required output metric for her position, but Ms. Brown received dispensation based on her work on a specific project. [Filing No. 43-2 at 4.] Ms. Brown similarly received "mitigat[ion]" on the element of Timeliness for this evaluation period. [*Id.*]

**IV.   This Court Should Grant Summary Judgment to Defendant**

    **A.   The VA Did Not Fail to Reasonably Accommodate Ms. Brown**

In *Bailey v. Standard Reg. Co.*, No. 1:05-CV-943-SEB-JMC, 2007 WL 671041, at *1 (S.D. Ind. Feb. 28, 2007), this Court held that a plaintiff suffering from hidradenitis suppurativa failed to show a disability where she did not present evidence of the degree to which this skin condition prevented her from sitting, standing, walking, or laying down. *Id.* at *7. Ms. Brown argues that, in light of the modifications under the ADA Amendments Act, her hidradenitis suppurativa constitutes a disability under the Rehabilitation Act. [Filing No. 44 at 31–34.] Even the post-ADAAA regulations make clear, though, that "not every impairment will constitute a disability." 29 C.F.R. § 1630.2(j)(1)(ii).

Ms. Brown does not point to any case in which a court has recognized hidradenitis suppurativa as such. She also does not address *Krachenfels v. N. Shore Long Island Jewish Health Sys.*, No. 13-CV-243 JFB WDW, 2014 WL 3867560, at *1 (E.D.N.Y. July 29, 2014), in

which an ADA plaintiff alleged that she was denied reasonable accommodation for a similar skin condition that caused "open lesions" and "blisters" and that, when "flared up," produced intense pain, prevented plaintiff from showering, and interfered with her sleep. *Id.* at *3 (cleaned up). The Eastern District of New York concluded that plaintiff's "general statement" that her skin condition caused difficulty with sleeping and showering was insufficient to show that she was disabled, even under the more lenient standard following the ADAAA. *Id.* at *11–13.

So, too, here, Ms. Brown has the burden of showing that her health condition "substantially limit[ed]" her ability to perform one or more major life activities "as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii); *see also* 1 *Americans with Disab.: Pract. & Compliance Manual* §§ 2:12 & 2:13. Ms. Brown's reference to her own testimony, in which she relates generalized difficulties in dressing, cooking, and walking, falls short of this burden. [*See, e.g.,* Filing No. 39-4 at 32 (EEOC Tr. Vol. I at 31:5–20) (Ms. Brown's testimony that hidradenitis suppurativa made it painful to walk "[i]n some cases," and explaining that, given the pain, it was "ideal" if someone else could fetch water or cook for her because "if [she] didn't have to move at that particular time during the flare, then [she] wouldn't want to").] In *Richardson v. City of Scottsburg, Indiana*, No. 4:18-CV-00169-SEB-DML, 2020 WL 998660, at *4–5 (S.D. Ind. Mar. 2, 2020), for instance, this Court held that an ADA plaintiff "failed to establish that she is disabled within the meaning of the ADA and ADAAA" where she relied mainly on her own "vague estimates" about the problems that she experienced due to her medical condition and where her physician's opinion letter did not explain the limitations that she experienced.

Even if Ms. Brown is disabled, the VA did not fail to reasonably accommodate her. Ms. Brown continues to accuse the VA of "cherry-picking" information in its adjudication of her

7

Hardship Transfer Request and Request for Reassignment under the union agreement. [Filing No. 44 at 34.] This argument cannot be squared with either Ms. Brown's written statements or her sworn testimony.

In the Hardship Transfer Request, Ms. Brown "*request*[ed] a *transfer* to the St. Petersburg, FL Regional Office due to a significant *hardship*," and in submitting this request, she completed an "Employee Hardship Transfer Information" form. [Filing No. 39-9 (emphasis added); Filing No. 39-11 at 2–3 (DEF000207–08).] If that were not already clear enough, Ms. Brown testified before the EEOC that, when she submitted this document to Ms. Wilson, she specifically stated "that [she] *needed a hardship transfer*." [Filing No. 39-4 at 50 (EEOC Tr. Vol. I at 48:18–49:2) (Brown's testimony) (emphasis added).]

Likewise, in the Request for Reassignment, Ms. Brown unequivocally sought reassignment under "the 2011 VA/AFGE Master Agreement, Article 13." [Filing No. 39-14 (Request for Reassignment).] And—punctuating that this was a demand under the union agreement—she copied her union steward on it. [*Id.*]

In her brief, Ms. Brown asserts that when she submitted the Hardship Transfer Request to Ms. Wilson, she "told Ms. Wilson that she needed accommodation for her medical condition." [Filing No. 44 at 36; *see also id.* at 35.] In fact, Ms. Brown testified before the EEOC that she "d[id not] remember saying [to Ms. Wilson that she] wanted an accommodation" when she submitted the Hardship Transfer Request. [Filing No. at 49 (EEOC Tr. Vol. I at 48:18–22) (Brown's testimony).] Rather, Ms. Brown explained, she specifically stated that this was a request for a hardship transfer. [*Id.* (EEOC Tr. Vol. I at 48:18–49:2).]

Because the Hardship Transfer Request and Request for Reassignment were not requests for accommodation, the analysis ends there. *Stelter v. Wisconsin Physicians Serv. Ins. Corp.*, 950

F.3d 488, 491 (7th Cir. 2020) ("Stelter fails to show an accommodation was requested with regards to a sit-to-stand workstation, flexibility with medical appointments, or driving long distances. 'A plaintiff typically must *request* an accommodation for [her] disability to claim that [s]he was improperly *denied* an accommodation under the ADA.'") (quoting *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 813 (7th Cir. 2015) (emphasis in original).

Even if it didn't, as pointed out in Defendant's opening brief [Filing No. 40 at 20], failure to engage in the interactive process does not itself establish a violation of the Rehabilitation Act. So even if the Hardship Transfer Request and Request for Reassignment had been accommodation requests, that does not automatically equate to liability for the VA. *E.g., Massey v. Rumsfeld*, No. IP 00-41-CHG, 2001 WL 1397309, at *9 (S.D. Ind. Nov. 5, 2001); *see also Golden v. Indianapolis Hous. Agency*, No. 1:15-CV-00766-RLY-DML, 2017 WL 283481, at *8 (S.D. Ind. Jan. 23, 2017), *aff'd*, 698 F. App'x 835 (7th Cir. 2017). Ms. Brown offers no response to this—but it completely undermines her position. For the Hardship Transfer Request and Request for Reassignment to be "actionable," Ms. Brown needed to show that the failure to enter into the interactive process "prevent[ed] identification of an appropriate accommodation for [her]." *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013). She has not done so. And it is undisputed that, by February 27, 2014, the parties did engage in an interactive process. [*See, e.g.,* Filing No. 39-20.] Even if the VA was obligated to look past the plain language of the Hardship Transfer Request and Request for Reassignment, and counterintuitively construe these as requests for accommodation, that still does not provide Ms. Brown with an avenue to recovery.

It is also undisputed that once Ms. Brown submitted the Request for Accommodation, the VA promptly convened a meeting on February 27, 2014, to understand what accommodations

would help Ms. Brown. [Filing No. 39-20 (Pl. Dep. Ex. 9); Filing No. 12 (Am. Compl. ¶ 53).] In her brief, Ms. Brown suggests that, during the interactive meeting, "she was in great pain . . . due to a cyst, and that she became emotional during this meeting because of her pain." [Filing No. 44 at 14.] Assuming it's true, that is understandable. But it did not exempt Ms. Brown from her overarching obligation to "meet the [VA] half way" and to make "reasonable efforts to help the [employer] decide what reasonable accommodations are necessary." *Reeves ex rel. Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 702 (7th Cir. 2014) (citing *Basden* 714 F.3d at 1038 & *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)).

Ms. Brown does not claim that she offered any helpful information during the interactive meeting. Indeed, even Ms. Gentry, her union representative, testified that Ms. Brown "was getting emotional" during it. [Filing No. 39-5 at 32 (EEOC Tr. Vol. II at 278:19–20).] And after it ended, Ms. Brown did nothing. Mr. Dean sent her an email immediately after the interactive meeting concluded, explaining that he had "g[iven Ms. Brown] VA Form 0857e Request for Medical Documentation" and told Ms. Brown that she "ha[d] 15 days to submit the 0857 form." [Filing No. 39-20; *see also* Filing No. 39-21.] In her brief, Ms. Brown "disputes" that she received Form 0857e "during th[e interactive] meeting."[3] [Filing No. 44 at 18.] But critically, she does not (nor can she) dispute that she received Mr. Dean's email asking for her to have her physician complete this form.

---

[3] Ms. Brown takes two conflicting positions in her brief: in response to Defendant's Statement ¶ 51, she asserts that she "does not dispute receiving VA Form 0857e" (but claims it was not during the interactive meeting), whereas in response to Defendant's Statement ¶ 52, she claims that she "does not recall ever receiving the Form 0857e" at all. [Filing No. 44 at 18.] That inconsistency is beside the point, though, because what matters is that Ms. Brown concedes that she never asked her doctor to complete it, even though Mr. Dean asked her to do so in his email of February 27, 2014. [*Id.*; *see also* Filing No. 39-1 (Pl. Dep. at 77:2–78:7); Filing No. 39-20.]

Despite receiving this email, Ms. Brown admits that she never asked her physician to provide the information that the VA requested. [Filing No. 39-1 (Pl. Dep. at 77:2–78:7).] The information that the VA sought from Ms. Brown's physician included details on "one or more of the activities [her] impairment limits (walking, reaching, breathing, etc.);" "the extent or degree to which the impairment limits an activity;" and "how the accommodation w[ould] assist [Ms. Brown] in . . . performing the essential functions of the job[.]" [Filing No. 39-21 at 1–2.] This information is not addressed in the letter from Dr. Huff that Ms. Brown had submitted [*see* Filing No. 39-15], and as personal medical information, it was within Ms. Brown's control. In her email to Mr. Young of March 25, 2014, Ms. Brown made clear that she did not intend to submit any additional medical documentation. [Filing No. 39-22.] Ms. Brown's intransigence and refusal to work with the VA caused the breakdown of the interactive process. *See Jackson v. City of Chicago*, 414 F.3d 806, 813–14 (7th Cir. 2005) (plaintiff caused breakdown of interactive process by not providing documentation from physicians).

Furthermore, Ms. Brown does not seriously dispute that she was exclusively focused on receiving a transfer and that no other accommodation was acceptable to her. [*E.g.,* Filing No. 39-5 (EEOC Tr. Vol. II at 312:4–9 & 396:21–397:2).] She made no effort to locate a specialist in the Indianapolis area for her medical condition because she believed it "would be pointless." [*See, e.g.,* Filing No. 39-4 at 219 (EEOC Tr. Vol. I at 218:12–14).] Under the VA's policies, though, transfer is "the accommodation of last resort." [Filing No. 39-23 (VA Handbook 5975.1, Section 16) (DEF000345–46).] The fact that Ms. Brown refused to work with the VA to find less-burdensome accommodations did not foist onto the VA the obligation to grant Ms. Brown's specific desired accommodation.

Ms. Brown's focus on *Lawler v. Peoria Sch. Dist. No. 150*, 837 F.3d 779 (7th Cir. 2016), does not show that the VA failed to reasonably accommodate her. In *Lawler*, after being attacked and injured by a disruptive student, the plaintiff submitted a note from her physician stating that the attack had "retriggered" the plaintiff's PTSD "and that she needed to be transferred to a different teaching environment." *Id.* at 781. In this case, by contrast, Dr. Huff stated that Ms. Brown might "benefit" from being closer to her family in Florida. [Filing No. 39-15.] He also expressed that, once she relocated to Florida, it was "essential" that she find "an appropriate dermatologist" who could continue to provide her care. [*Id.*] What Dr. Huff did *not* say in this letter was that transfer to Florida was the only way that Ms. Brown's skin condition could be managed. [*See id.*] Furthermore, when the VA tried to get more information from Dr. Huff to understand how this condition impacted Ms. Brown's life activities and to determine which accommodations "w[ould] assist [her]" in performing her job, Ms. Brown stonewalled and refused to provide anything further. [Filing No. 39-21 at 1–2.]

The VA lived up to its obligations under the Rehabilitation Act. Ms. Brown's allegations of failure to accommodate cannot succeed.

### B. Ms. Brown Did Not Experience a Hostile Work Environment

Ms. Brown also cannot show that her allegations meet the high standard for hostile work environment.

Ms. Brown makes no effort to distinguish her case from *Mannie v. Potter*, 394 F.3d 977 (7th Cir. 2005), or *Silk v. City of Chicago*, 194 F.3d 788 (7th Cir. 1999). [*See* Filing No. 44 at 40–43.] Those decisions are fatal to her case. In *Mannie*, a postal service employee alleged that she suffered "years of abuse" at the hands of her supervisors, who "frequently made derogatory statements" about her, called her "crazy," and "suggest[ed] that she was not a 'live body.'" 394 F.3d at 980–83. The Seventh Circuit held that plaintiff had not proffered evidence that she

experienced sufficiently severe or pervasive harassment. Likewise, in *Silk*, the plaintiff's supervisors vulgarly mocked his "medical problems," called him a "medical abuser," and referred to him as a "useless piece of [expletive]" based on his medical condition. 194 F.3d at 803–07. Again, the Seventh Circuit held that this did not constitute an actionable hostile work environment. Ms. Brown's allegations in this case are objectively less severe than the claims in those cases, and thus her allegations too must fail. *See also Ford v. Marion Cty. Sheriff's Off.*, 942 F.3d 839, 856–57 (7th Cir. 2019) (affirming summary judgment on hostile work environment allegations for lack of severe or pervasive conduct).

The cases on which Ms. Brown relies do not compel a different result. In *Kyle v. Brennan*, No. 17 C 03649, 2020 WL 1330371, at *6 (N.D. Ill. Mar. 23, 2020), the Northern District of Illinois denied a motion to dismiss where plaintiff alleged that he was "singled out and forced to disclose his private medical diagnosis when others were not required to do so."[4] This case, however, is at the summary judgment stage, and summary judgment requires Ms. Brown to "put [her] evidentiary cards on the table." *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017). Ms. Brown does not show that she was treated differently than other employees. Indeed, the VA specifically asked her to complete a ***standardized VA form*** in order to allow the VA to assess her request. [Filing No. 39-5 (EEOC Tr. Vol. II at 397:17–398:9) (Wilson's testimony); *see also* Filing No. 39-21 (VA Form 0857e, Pl. Dep. Ex. 10).] Ms. Brown was not "harassed" when she was asked to complete a routine form.

Similarly, in *Jay v. Intermet Wagner Inc.*, 233 F.3d 1014 (7th Cir. 2000), the Seventh Circuit affirmed summary judgment for the employer, concluding that it acted reasonably

---

[4] *McCray v. Wilkie*, 966 F.3d 616 (7th Cir. 2020), which Ms. Brown cites in passing, is also a decision involving allegations at the pleading stage.

notwithstanding a "20 month delay" in reassigning plaintiff to a new position. *Id.* at 1017. While Ms. Brown rails about the "delay in accommodating" her disability, the evidence shows that the delay was the result of Ms. Brown's own actions, including her failure to cooperatively provide the VA with information from her physician.

A plaintiff alleging hostile work environment must clear a "high standard" of showing "egregious" working conditions. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 789 (7th Cir. 2007). Ms. Brown's allegations fall short of this standard. *See, e.g, Boss v. Castro*, 816 F.3d 910, 920–21 (7th Cir. 2016).

### C. The VA Did Not Unlawfully Disclose Ms. Brown's Medical Information

Ms. Brown's contention that her medical information was "unlawfully disclosed" relates to Ms. Lima's response to her Request for Reassignment under the union master agreement. [Filing No. 39-17 (Pl. Dep. Ex. 7).] As Defendant previously argued, since the Request for Reassignment was not a request for accommodation, Ms. Lima's response did not implicate the Rehabilitation Act's provisions. [*See* Filing No. 40 at 26.] As such, Ms. Brown is mistaken that Defendant does not challenge that her medical information was "obtained . . . through employment-related medical examination and inquiries." [Filing No. 44 at 44.] *See also Foos v. Taghleef Indus., Inc.*, 132 F. Supp. 3d 1034, 1050 (S.D. Ind. 2015) (discussing 42 U.S.C. § 12112(d)(4)(C)); 29 U.S.C. § 791(f). This information was not obtained through such procedures: Ms. Brown voluntarily turned it over in an effort to obtain reassignment pursuant to her union's bargaining agreement with the VA. Accordingly, it does not fall within the purview of the Rehab Act at all. *See Childers v. St. Vincent Heart Ctr. of Indiana*, LLC, No. 1:18-CV-03984-JPH-TAB, 2021 WL 146998, at *3–4 (S.D. Ind. Jan. 14, 2021).

Additionally, "a plaintiff must have evidence of emotional distress damages to survive summary judgment" on this type of claim. *Rivera v. City of North Chicago*, No. 19 C 5701, 2021

14

WL 323794, at *5 (N.D. Ill. Feb. 1, 2021) (emphasis in original) (citing *Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506, 519–20 (3d Cir. 2001)). Ms. Brown offers nothing to suggest that she actually experienced a "tangible injury" just because her management was copied on Ms. Lima's response. *See Foos*, 132 F. Supp. 3d at 1050.

Even if it had been subject to the Rehab Act, Ms. Lima's response did not violate it. Ms. Brown claims that, "[w]ith the exception of Mr. Stephens, who already knew about Ms. Brown's condition," none of the other individuals copied to Ms. Lima's response "had any reason to know Ms. Brown's medical information." [Filing No. 44 at 48.] Yet Ms. Brown fails to acknowledge that she also voluntarily disclosed the details of her medical condition to Mr. Dean when she submitted the Request for Reassignment. [*See* Filing No. 39-14 (Request for Reassignment, addressed to Mr. Stephens and copying Ms. Lima and Mr. Dean).]

In any event, the purpose of the confidentiality provision is to allow the employer to disseminate information to satisfy its business needs. *Porfiri v. Eraso*, 121 F. Supp. 3d 188, 199 (D.D.C. 2015) (quoting *Doe v. U.S. Postal Serv.*, 317 F.3d 339, 344 (D.C. Cir. 2003)). Ms. Lima limited her response to the managerial employees who were in Ms. Brown's chain of command, and thus who needed to be apprised of the VA's response to her request for transfer. [*See* Filing No. 39-17; Filing No. 39-18 (Defendant's Response to Interrogatory No. 1).] As to Ms. Brown's arguments regarding the statutory exemptions, the response informed these managers that the medical information submitted by Dr. Huff "fail[ed] to demonstrate that [Ms. Brown was] unable to perform [her] assigned duties as a GS 9, Veterans Service Representative." [Filing No. 39-17.] It thus notified Ms. Brown's "supervisors and managers" regarding the extent of her "necessary restrictions" on her work or duties. 42 U.S.C. § 1211(d)(3)(b)(i). Regardless, because the information was not obtained through a medical examination or inquiry, but rather by Ms.

15

Brown's own voluntary disclosure in an effort to obtain reassignment under her union agreement, Ms. Lima's response did not violate the Rehab Act's confidentiality provisions.

## CONCLUSION

This Court should grant summary judgment to the VA.

Respectfully submitted,

JOHN E. CHILDRESS
Acting United States Attorney

By:  /s/ J. Taylor Kirklin
      J. Taylor Kirklin
      Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I certify that on August 13, 2021, a copy of the foregoing was filed electronically. Notice of this filing was sent to:

Denise M. Clark
CLARK LAW GROUP, PLLC
dmclark@benefitcounsel.com

                                                                               */s/ J. Taylor Kirklin*
                                                                               J. Taylor Kirklin

Office of the United States Attorney
10 West Market Street, Suite 2100
Indianapolis, IN  46204-3048
Telephone: (317) 226-6333
Fax: (317) 226-5027
E-mail: taylor.kirklin@usdoj.gov