UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TREVENIA BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-01154-JPH-MJD |
| | ) | |
| ROBERT WILKIE Secretary, U.S. | ) | |
| Department Of Veterans Affairs, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Trevenia Brown alleges that her employer, the United States Department of Veterans Affairs, violated the Rehabilitation Act by failing to provide her with a reasonable accommodation for her disability, subjecting her to a hostile work environment, and improperly disclosing her confidential medical information. The VA has filed a motion for summary judgment.  For the reasons below, that motion is **GRANTED in part and DENIED in part**.  Dkt. [39].

**I.**
**Facts and Background**

Because the VA moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

**A.    The Indianapolis Veterans Service Center**

The Veterans Service Center in Indianapolis, Indiana, is a component of the VA's Veterans Benefits Administration.  Dkt. 39-1 at 16–17, 29–32 (Brown

1

dep.).  Veterans Service Representatives who work at the Service Center are organized into teams with each team handling a particular kind of claim.  *Id.* at 34.  Teams are managed by a Coach and an Assistant Coach.  *See* dkt. 39-4 at 54, 59, 75 (EEOC Tr. Vol. I).  Coaches are managed by Assistant Veterans Service Center Managers (AVSCM) who are supervised by the Service Center Manager.  Dkt. 39-6 (Veterans Service Center organizational chart).  The Service Center is under the responsibility of a Regional Office Director and an Assistant Director.  Dkt. 39-2 at 7 (Brown Tel. Aff. at 26–27); dkt. 12 at 3 ¶ 22 (amended Complaint).

Pursuant to VA policies, an employee may apply for a hardship transfer. Dkt. 39-10 (VA Guidance for Hardship Transfers).  Applications for hardship transfers are "considered on a case-by-case basis."  *Id.*  Hardship transfers "will not be considered if the employee is under a [Performance Improvement Plan], leave restriction, or disciplinary action."  *Id.*

Employees of the Service Center are members of the American Federation of Government Employees (AFGE), dkt. 39-14, and there is a "Master Agreement" between the VA and AFGE.  *Id.*; dkt. 39-5 at 11–12 (EEOC Tr. Vol. II).  Rachel Gentry and Christina Clark were local union representatives at the Service Center.  Dkt. 39–5 at 12 (EEOC Tr. Vol. II); dkt. 39-14.  Pursuant to the Master Agreement, an employee may seek reassignment for medical reasons. Dkt. 19-16.  To obtain such a reassignment, an employee must be "unable to perform their assigned duties as certified by a health care provider."  *Id.*

The VA has Equal Employment Opportunity and anti-discrimination policies, which are readily available on its website. https://www.va.gov/ORMDI/docs/EEO_Policy.pdf.  The VA also has a handbook, a portion of which deals with requests for reasonable accommodation under the Rehabilitation Act.  Dkt. 43-6.  The VA allows employees to make either an "oral or written request."  *Id.* at 19–20.  A written request can be made on VA Form 0857A.  Dkt. 39-19.

### B. Trevenia Brown's Employment with the Indianapolis Veterans Service Center

In September 2011, Trevenia Brown began working for the Indianapolis Service Center as a Veterans Service Representative.  Dkt. 39-1 at 16–17, 29–32 (Brown dep.).  As a Veterans Service Representative, she helped prepare veteran's claims for decision by a "rating specialist" by collecting relevant medical information, requesting exams, and reviewing medical evidence.  *Id.*

Jim Dean was Ms. Brown's Coach and immediate supervisor.  Dkt. 39-1 at 54 (Brown Dep.).  Donald Young was her Assistant Coach.  *Id.*  Adam Kinder and Deb Street were Ms. Brown's AVSCMs, and Ena Lima was the Service Center Manager.  Dkt. 39-6 (VA Organizational Chart).  Michael Stephens was the Director of the Service Center and Yvonne Hamilton was the Assistant Director.  Dkt. 39-2 at 7 (Brown Tel. Aff. at 26–27).

In December 2013, Ms. Brown received a negative monthly performance review informing her that she was not meeting her "output" or "quality accuracy" goals.  Dkt. 39-7.  A later report from January 2014 similarly indicated that Ms. Brown's performance had declined in both output and

3

quality accuracy and was below expectation in both categories.  Dkt. 39-8.

Despite these concerns, Ms. Brown was rated as "fully successful" for quality

and output for the period of October 2013 through April 2014.  Dkt. 43-2 at 5.

### C.    Ms. Brown's Medical Condition

Ms. Brown suffers from a "chronic and unpredictable" skin condition

called Hidradenitis suppurativa, also known as acne inversa.  Dkt. 39-31.

During a flare-up, Hidradenitis causes "large painful cysts, sinus tracts, and

severe scarring," which can become secondarily infected, fill with pus and

blood, and spontaneously burst and drain.  *Id.*; dkt. 39-4 at 32–33 (EEOC Tr.

Vol. I).  Hidradenitis "often results in significant pain, morbidity, and poor

quality of life."  Dkt. 39-31.  "Development of new nodules, cysts, and draining

sinus tracts often occur without warning" and require "surgical and/or medical

intervention."  *Id.*  Symptoms during a flare-up leave Ms. Brown unable to

dress or care for herself, dkt. 39-4 at 31–33 (EEOC Tr. Vol. I), and "pretty much

bedridden."  *Id.* at 238.  Ms. Brown has had cysts spontaneously burst and

drain at work, subjecting her to debilitating pain and humiliation.  *Id.* at 33–34

(EEOC Tr. Vol. I).

Ms. Brown has been treated by Robert Huff, M.D., since June 2012.

Dkt. 39-31.  In June 2013, Ms. Brown applied and was approved for leave

under the Family Medical Leave Act (FMLA) because her flare-ups were

happening more frequently and with greater severity.  Dkt. 39-1 at 43–44

(Brown Dep.); dkt. 39-4 at 19–21 (EEOC Tr. Vol I); dkt. 43-3 (FMLA

Application).  Ms. Brown used FMLA leave frequently.  *Id.* at 99, 101.

### D.    Hardship Transfer Request

On January 17, 2014, Ms. Brown submitted a "hardship transfer request" form asking to be transferred to the St. Petersburg, Florida Regional Office.  Dkt. 39-2 at 5–6 (Brown Tel. Aff. at 19–21); dkt. 39-11.  Along with the form, she included a letter addressed to Director Stephens requesting the transfer "due to significant hardship."  Dkt. 39-9.  Ms. Brown submitted the hardship transfer request form and letter to Sonya Wilson, the HR Specialist.  Dkt. 39-2 at 5 (Brown Tel. Aff. at 20).  Ms. Brown explained in the hardship transfer request:

> I have a chronic health condition for which I am FMLA approved that requires services and care of a specialist which is not available to me in the state of Indiana.  . . . Currently, not having access to proper treatment is not only creating an emotional hardship on myself and immediate family members, but also a financial hardship due to unpaid missed days at work that would be reduced substantially or eliminated completely with proper support and adequate treatment.  In addition, the added stress of being so far away from my family during this critical time in my life is only aggravating my current condition making it hard for me to be successful in my career which is extremely important to me.

Dkt. 39-9.

In connection with requesting a hardship transfer, Ms. Brown told Ms. Wilson that she "was having issues with [her] disability that [were] affecting [her] job," that she wanted to see a specialist, and that she felt it would help her to be closer to her family.  Dkt. 39-4 at 49–50 (EEOC Tr. Vol. I); dkt. 39-2 at 5–6 (Brown Tel. Aff. at 20–21).  Ms. Brown also told Ms. Wilson that she believed her request to transfer to Florida "should be a reasonable

5

accommodation request." Dkt. 39-2 at 6 (Brown Tel. Aff. at 21).  Ms. Wilson responded that access to treatment from a specialist was "not a legitimate reason." *Id.*

On January 21, 2014, Director Stephens denied Ms. Brown's hardship transfer request based on a recommendation from Ms. Lima. Dkt. 39-13 (Jan. 23, 2014, email summarizing hardship transfer request decision).  Specifically, Ms. Lima informed Director Stephens that Ms. Brown was "struggl[ing] to meet output and quality measures for her standard." Dkt. 39-12; dkt. 39-13; dkt. 39-3 at 4 n.2.

During a meeting on January 22, Ms. Lima told Ms. Brown that her hardship transfer request had been denied due to performance issues. Dkt. 39-13.  Also during that meeting, Ms. Lima said that she "didn't owe [Ms. Brown] anything," and that "just because [she] had a disability, that doesn't matter." Dkt. 39-1 at 52.  Ms. Lima further told her that she could not "go have a meltdown in Human Resources to get removed." Dkt. 39-2 at 16 (Brown Tel. Aff. at 62).

### E. Reassignment Request

On February 6, 2014, Ms. Brown submitted a Reassignment Request, dkt. 39-14, pursuant to the Master Agreement between the VA and AFGE.  Ms. Brown submitted her Reassignment Request to Director Stephens with copies to Ms. Lima, Mr. Dean, and Ms. Clark. *Id.*  Ms. Brown's Reassignment Request stated, in relevant part:

> I have a serious chronic medical condition, hidradenitis suppurativa Stage II, which causes me severe,

6

> debilitating pain and necessitates medical intervention
> regularly.  Because of my need for ongoing specialized
> medical and mental health attention, as well as the
> support of my family, I am requesting reassignment to
> the St. Petersburg FL Regional Office . . . A transfer to
> the St. Petersburg area will allow me to seek out a
> medical specialist recommended by Dr. Huff so that my
> condition can be better managed and allow me to
> maintain more regular attendance at work.

*Id.*  In support, Ms. Brown submitted a letter from Dr. Huff describing her

condition as "chronic and unpredictable."  Dkt. 39-15.  He explained that it

"creates significant painful nodules and cysts with secondary sinus tract

formation," leads to "secondary bacterial infections and varying degrees of

scarring," and "can cause significant physical and sometimes debilitating pain."

*Id.*  He further stated that the need for medical treatment is frequent, and

"depending on stage, surgical intervention" is necessary.  *Id.*

On February 10, Ms. Lima denied Ms. Brown's Reassignment Request,

explaining that Dr. Huff's medical statement "fail[ed] to demonstrate that [Ms.

Brown] [was] unable to perform [her] assigned duties."  Dkt. 39-17.  Ms. Lima's

letter acknowledged that Ms. Brown has a "serious chronic medical condition,"

that she "suffer[s] from a dermatological disorder that is chronic and

unpredictable," and that her doctor "stated that relocation to Florida is

essential in controlling [her] disease."  *Id.*  Ms. Lima also referenced Ms.

Brown's Hardship Transfer Request and reiterated the reasons for its denial.

*Id.*  Ms. Lima then suggested: "If you believe that you need an accommodation

due to a disability or workplace barrier that precludes you from performing the

essential functions of your position, you may request a reasonable accommodation by completing VA Form 0857a."  Dkt. 39-17.

Ms. Hamilton, Ms. Street, and Mr. Kinder were also copied on this letter, even though they were not copied on the original Reassignment Request.  *Id.*

### F. Written Request for Accommodation

On February 24, 2014, Ms. Brown submitted a "Written Confirmation of Request for Accommodation" on VA Form 0857A.  Dkt. 39-19.  In the space titled "Accommodation Requested," Ms. Brown referenced the note from Dr. Huff filed with her Reassignment Request and stated that she "originally requested a reasonable accommodation on Jan[uary] 17, 2014 and again on" January 23, but the interactive process had not yet begun.  *Id.*  Under "Reason for Request," she wrote "Please refer to doctor's letter."  *Id.*

Three days later, Mr. Dean and Ms. Wilson met with Ms. Brown and Ms. Gentry to discuss her request for accommodation.  Dkt. 39-20 (email recapping February 27, 2014 meeting); dkt. 39-5 at 60 (EEOC Tr. Vol. II).  The meeting did not result in an agreed accommodation.  Dkt. 39-20; dkt. 39-5 at 60–65, 145–52 (EEOC Tr. Vol. II).  Ms. Wilson interpreted Ms. Brown's behavior and demeanor during the meeting as her not paying attention or not willing to cooperate in the interactive process.  Dkt. 39-5 at 148–52.  Ms. Brown explained that if she was emotional during the meeting it was because she "was crying in pain" due to a flare-up.  Dkt. 39-4 at 162–63 (EEOC Tr. Vol. I).

Ms. Wilson further testified that she gave Ms. Brown a medical request form "identifying the kind of information [they] needed to make a

determination" before the meeting ended.  *Id.* at 151–52; dkt. 39-20 (email recapping February 27, 2014, meeting); dkt. 39-21 (VA Form 0857e).  Ms. Brown testified that she does not recall receiving the form during the meeting and that she told Ms. Wilson and Mr. Dean she believed she had already provided all the necessary medical information.  Dkt. 39-4 at 164–66, 201–02 (EEOC Tr. Vol. I).

On March 25, another VA employee emailed Ms. Brown about her reasonable accommodation request and stated that they had not received the necessary medical information.  Dkt. 39-22.  Ms. Brown responded that he should "refer to the Doctor's certification that have already been provided," and requested that he send "the details of [the] decision and the information missing from [her] doctor's certification if it does not suffice . . . ."  *Id.*  Ms. Brown sent a follow-up email shortly after stating: "if you['re] unable to provide the reasonable accommodation requested, please provide the reasons and what accommodation that you (the agency) propose would benefit me."  *Id.*

No one from the VA followed-up with Ms. Brown after the March 25 email exchange.  Dkt. 39-4 at 90.  Her request for accommodation was denied on April 1, 2014, because "the medical information [she] provided was not sufficient to show" that Ms. Brown had a disability covered by the Rehabilitation Act.  Dkt. 39-24.

On August 1, 2014, Ms. Brown submitted a letter from Dr. Huff that provided additional information about her condition and recommended that she be transferred to St. Petersburg to obtain treatment at a center specializing

in treating Hidradenitis.  Dkt. 39-31.  The VA granted Ms. Brown's request and

she was transferred to St. Petersburg in October of 2014.  Dkt. 39-1 at 82

(Brown dep.).

### G. Procedural History

Ms. Brown filed a complaint for administrative review and received a

hearing before an Equal Employment Opportunity Commission Administrative

Law Judge (ALJ).  Dkt. 39-3 at 2 (ALJ decision).  The ALJ issued a written

decision denying Ms. Brown's claims.  *Id.* at 18.  Ms. Brown appealed that

decision to the EEOC and the EEOC affirmed the ALJ's decision.  Dkt. 39-32 at

4 (EEOC decision).  Ms. Brown then filed this lawsuit.  Dkt. 1; *see also* dkt. 12

(amended Complaint).

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must

inform the court "of the basis for its motion" and specify evidence

demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this

burden, the nonmoving party must "go beyond the pleadings" and identify

"specific facts showing that there is a genuine issue for trial."  *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the

evidence "in the light most favorable to the non-moving party and draw[s] all

reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

### III.
### Analysis

Ms. Brown brings three claims under the Rehabilitation Act: (1) failure to reasonably accommodate her disability; (2) hostile work environment; and (3) unlawful disclosure of her confidential medical information.  Dkt. 12 at 9–11. Courts "resolve Rehabilitation Act claims by looking to the same standards and provisions that govern the Americans with Disabilities Act." *Vargas v. Dejoy*, 980 F.3d 1184, 1188 n.4 (7th Cir. 2020) (citing *Jackson v. City of Chicago*, 414 F.3d 806, 810–11 (7th Cir. 2005)).  The VA has moved for summary judgment on all claims.[1]

### A.      Reasonable Accommodation

To succeed on a failure to accommodate claim, Ms. Brown must "prove that (1) [she] was a qualified individual with a disability, (2) the [VA] was aware of [her] disability, and (3) the [VA] failed to reasonably accommodate [her] disability." *Sansone v. Brennan*, 917 F.3d 975, 979 (7th Cir. 2019).  The VA

---

[1] Ms. Brown's brief in response to the VA's motion for summary judgment, in relevant part, was forty-six pages.  Dkt. 44.  Local Rule 7-1(e) imposes a thirty-five-page limit on response briefs unless the responding party first requests and is granted permission from the Court to exceed that limit, which Ms. Brown did not do.  S.D. Ind. L.R. 7-1(e)(1)–(2).  The VA raised this issue in reply and asks the Court to disregard the portion of Ms. Brown's brief that exceeds thirty-five pages.  Dkt. 45 at 1–2.  Local rules "have the force of law" and the Court has substantial discretion in enforcing them.  *Hinterberger v. City of Ind.*, 966 F.3d 523, 527–28 (7th Cir. 2020).  While the Court has considered the entirety of Ms. Brown's response—and not disregarded the excess pages—other forms of sanctions remain available.  Ms. Brown's counsel is **ordered to show cause** no later than **June 7, 2022,** why the Court should not impose sanctions for her failure to follow L.R. 7-1(e).

argues that it is entitled to summary judgment because Ms. Brown has not shown that she is a qualified individual with a disability, and even if she is, the VA gave her a reasonable accommodation after she properly made the request. Dkt. 40 at 16–17.

### 1. Qualified individual with a disability

The VA argues that Ms. Brown has not shown that she was disabled because she has not established how frequently she experienced "flare-ups" of Hidradenitis or sought medical treatment. Dkt. 40 at 16–17. The VA further argues that the February 14 note from Dr. Huff did not provide sufficient detail about her condition. *Id.* Ms. Brown responds that she has shown that, "when flared," her condition "substantially limits many major life activities, including her ability to move and sit." Dkt. 44 at 31–32. She also contends that the frequency of her flare-ups is irrelevant to determining if she has a disability under the Rehabilitation Act. *Id.* at 33–34.

Under the Rehabilitation Act, "a disability is 'a physical or mental impairment that substantially limits one or more major life activities.'" *Rowlands v. United Parcel Service – Fort Wayne*, 901 F.3d 792, 800 (7th Cir. 2018) (quoting 42 U.S.C. § 12102(1)). "Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* (quoting 42 U.S.C. § 12102(2)). "[A]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." *Gogos*

*v. AMS Mechanical Systems, Inc.*, 737 F.3d 1170, 1172–73 (7th Cir. 2013).  The frequency or duration of an "episodic impairment" is "no longer relevant to determining whether the impairment substantially limits a major life activity." *Id.* at 1173 (quoting 29 C.F.R. Pt. 1630, App. at Section 1630.2(j)(1)(vii)). "Instead, the relevant issue is whether" the impairment "substantially impaired a major life activity when [it] occurred."  *Id.*

Here, Ms. Brown has designated evidence that during the relevant timeframe she experienced flare-ups of symptoms of Hidradenitis that were "debilitating" and required her to be assisted with cooking, cleaning, getting dressed, and getting around.  Dkt. 39-4 at 32, 238 (EEOC Tr. Vol. I).  During a particularly bad flare-up, Ms. Brown is "pretty much bedridden."  *Id.* at 238; *see also* dkt. 39-15 (letter from Dr. Huff).  Ms. Brown has therefore shown that flare-ups of Hidradenitis substantially impaired major life activities including, but not limited to, caring for herself, performing manual tasks, and walking. *See* 42 U.S.C. § 12102(2) (listing major life activities).  Thus, a reasonable jury could conclude that Ms. Brown was disabled within the meaning of the Rehabilitation Act. *Cf. E.E.O.C. v. AutoZone, Inc.*, 630 F.3d 635, 640–43 (7th Cir. 2010) (reversing grant of summary judgment because a reasonable jury could find that plaintiff "was substantially limited in his ability to care for himself" when plaintiff testified at his deposition that he needed assistance with dressing himself, brushing his hair, and bathing).

### 2.  Failure to Accommodate

The VA next argues that it is entitled to summary judgment on Ms. Brown's failure to accommodate claim because Ms. Brown did not request an accommodation until late February of 2014.  Dkt. 40 at 18–20.  And when she did request an accommodation, the VA responded by engaging in the interactive process.  *Id.* at 20–23.  Ms. Brown responds that the VA's duty to engage in the interactive process began when she submitted the hardship transfer request in early January, and that the VA caused the breakdown of the interactive process in March of 2014.  Dkt. 44 at 34, 37.

"[T]he standard rule is that a plaintiff must normally request an accommodation before liability under the ADA attaches."  *Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000).  Requesting an accommodation "requires at most that the employee indicate to the employer that she has a disability and desires an accommodation."  *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 803 (7th Cir. 2005).  "Where notice is ambiguous as to the precise nature of the disability or desired accommodation, but it is sufficient to notify the employer that the employee may have a disability that requires accommodation, the employer must ask for clarification."  *Id.* at 804.  And once an employee requests an accommodation, "[a]n unreasonable delay in providing an accommodation for an employee's known disability" may violate the employer's duty to accommodate.  *McCray v. Wilkie*, 966 F.3d 616, 621 (7th Cir. 2020).  "Whether a particular delay qualifies as unreasonable necessarily turns on the totality of the circumstances."  *Id.* Relevant factors include: "the employer's good faith in attempting to

14

accommodate the disability, the length of delay, the reasons for the delay, the nature, complexity, and burden of the accommodation requested, and whether the employer offered reasonable alternatives." *Id.*

### a. Hardship transfer request and reassignment request

Ms. Brown's January 2014 hardship transfer request stated: "I have a chronic health condition for which I am FMLA approved that requires services and care of a specialist which is not available to me in the state of Indiana." Dkt. 39-9 at 1. She further explained:

> Currently, not having access to proper treatment is not only creating an emotional hardship on myself and immediate family members, but also a financial hardship due to unpaid missed days at work that would be substantially reduced or eliminated completely with proper support and adequate treatment. In addition, the added stress of being so far away from my family during this critical time in my life is only aggravating my current condition making it hard for me to be successful in my career which is extremely important to me.

*Id.* Ms. Brown also told Ms. Wilson that she "was having issues with [her] disability that [were] affecting [her] job," dkt. 39-4 at 49–50 (EEOC Tr. Vol. I); dkt. 39-2 at 5–6 (Brown Tel. Aff. at 20–21), and that she believed her transfer request "should be a reasonable accommodation request." Dkt. 39-2 at 6 (Brown Tel. Aff. at 21). From this designated evidence, a jury could find that the January 2014 hardship transfer request notified the VA that Ms. Brown "may have a disability that requires accommodation." *Sears, Roebuck & Co.*, 417 F.3d at 804.

*Lawler v. Peoria School Dist. No. 150* is instructive.  837 F.3d 779 (7th Cir. 2016).  In *Lawler*, the Seventh Circuit reversed the district court's grant of summary judgment in favor of an employer because a "jury reasonably could conclude that [the employer's] failure to seek clarification from [plaintiff]" as to whether he still wanted an accommodation "caused the breakdown in the interactive process."  *Id.* at 788.  The plaintiff presented a letter from his doctor to his employer's human resources department in support of a requested transfer for medical reasons.  *Id.* at 786.  The request was summarily denied and the employer "simply sat on its hands instead of following-up with [plaintiff] or asking for more information."  *Id.* (citations omitted); *see also Rowlands*, 901 F.3d at 795, 801.

Here, Ms. Brown's hardship transfer request and conversation with Ms. Wilson put the VA on notice that Ms. Brown may have been requesting an accommodation, thus triggering the VA's obligations under the Rehabilitation Act.  *Sears, Roebuck & Co.*, 417 F.3d at 803.  Any uncertainty about the written request should have been eliminated by Ms. Brown's statements to Ms. Wilson.  To the extent the responsible VA officials may not have known enough to understand the exact nature of Ms. Brown's physical condition and/or requested accommodation, that was the result of the VA "choosing not to follow up on an employee's requests for assistance," and "intentionally remaining in the dark."  *Sears, Roebuck & Co.*, 417 F.3d at 804.

In sum, Ms. Brown has designated evidence from which a reasonable jury could find that she requested an accommodation—thereby triggering the

VA's duty to engage in the interactive process—when she submitted the hardship transfer request in January 2014.  *Cf. Lawler*, 837 F.3d at 786; *Rowlands*, 901 F.3d at 801.[2]

### b. Breakdown of interactive process

The VA argues that once Ms. Brown submitted her written request for accommodation on February 24, 2014, it fulfilled its duty to engage in the interactive process.  Dkt. 40 at 20–21.  Ms. Brown responds that the VA "broke down the interactive process and caused [her] to remain unaccommodated for an additional eight months."  Dkt. 44 at 37.

Under the Rehabilitation Act, "both the employer and employee are responsible for engaging in an 'interactive process' to find a reasonable accommodation for the employee's disability."  *Lawler*, 837 F.3d at 786.  "Both parties are required to make a 'good faith effort' to determine what accommodations are necessary, but if a breakdown of the process occurs, 'courts should attempt to isolate the cause . . . and then assign responsibility.'"  *Id.* (quoting *Beck v. Univ. of Wisc. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996).

While the VA responded to Ms. Brown's written request for accommodation by meeting with her, dkt. 40 at 20, that meeting did not result in an agreed-upon accommodation.  The parties dispute what happened during

---

[2] Because the designated evidence could support the reasonable inference that the interactive process should have begun when Ms. Brown submitted the hardship transfer request in January, there is no reason to consider the VA's argument that the Reassignment Request did not trigger the interactive process.

the meeting and why an agreement was not reached.  *Compare* dkt. 39-5 at 148–49 (EEOC Tr. Vol. II) *with id.* at 356, *and* dkt. 39-4 at 162–63 (EEOC Tr. Vol. I); *compare* dkt. 39-20 (email recapping February 27, 2014 meeting) *with* dkt. 39-4 at 165 (EEOC Tr. Vol. I).

The VA points out that on March 25, 2014, it requested additional medical information "for the deciding management official to make a determination" on Mr. Brown's Request for Accommodation.  Dkt. 39-22.  Ms. Brown responded by referring to the doctor's note that she previously provided and asking if it was sufficient, and if not, what additional information was necessary.  *Id.*  Then she sent another email stating: "Also, if you['re] unable to provide the reasonable accommodation requested, please provide the reasons and what accommodation that you (the agency) propose would benefit me."  *Id.*  The VA denied her Request for Accommodation with no further explanation.  Dkt. 39-24.

In assigning responsibility for causing a breakdown of the interactive process, courts must "look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary."  *Beck*, 75 F.3d at 1135.  Here, a reasonable jury could find from the designated evidence that the VA did not participate in good faith in the interactive process or make reasonable efforts to determine what accommodations were needed.  *Beck*, 75 F.3d at 1135 ("A party that fails to communicate, by way of initiation or response, may also be acting in bad faith.").  A reasonable jury could further

18

find that the VA caused the breakdown of the process and is therefore liable for any resulting delay in providing Ms. Brown with an accommodation.

*       *       *

In sum, Ms. Brown has designated evidence showing that her hardship transfer request was sufficient to trigger the VA's duty to engage in the interactive process, and a reasonable jury could find that the VA failed to engage in the interactive process in good faith thereafter. The VA's motion for summary judgment on Ms. Brown's failure to accommodate claim is **denied.**

### B. Hostile Work Environment

The VA argues that "Ms. Brown's allegations fall far short of the level of severity necessary to establish a hostile work environment."[3] Dkt. 40 at 23. Ms. Brown responds that in evaluating her hostile environment claims, the Court should consider the "cumulative effect" of Ms. Lima's discriminatory remarks, the VA's failure to recognize an accommodation request, and the "VA's callous attitude towards Ms. Brown's medical condition." Dkt. 44 at 41 (citing *Ford v. Marion Cty. Sheriff's Office*, 942 F.3d 839, 851 (7th Cir. 2019)).

"A hostile work environment exists 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe

---

[3] The VA also argues that "[t]o the extent the Rehab Act does not actually create a cause of action for hostile work environment, Ms. Brown obviously cannot recover on it." Dkt. 40 at 23 (quoting *Yochim v. Carson*, 935 F.3d 586, 593 (7th Cir. 2019)). In *Yochim* the Seventh Circuit noted, "This court has not determined whether the ADA (and by extension, the Rehabilitation Act) encompasses claims of a hostile work environment." 935 F.3d at 593. But the Seventh Circuit has since held "that hostile work environment claims are cognizable under the ADA," *Ford v. Marion County Sheriff's Office*, 942 F.3d 839, 851–52 (7th Cir. 2019), which applies "by extension" to the Rehabilitation Act.

or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ford*, 942 F.3d at 851.  "Offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment." *Passananti v. Cook County*, 689 F.3d 655, 667 (7th Cir. 2012).

The core of Ms. Brown's argument is that the VA's failure to accommodate her disability over a prolonged period of time, coupled with other isolated instances of alleged harassment, created a hostile work environment. *See* dkt. 44 at 40–42.  The Seventh Circuit considered a similar argument in *Yochim* and concluded that the plaintiff did not show that her employer's failure to accommodate her created a work environment that "was both objectively and subjectively offensive because of 'severe or pervasive' harassment." 935 F.3d at 593 (quoting *Boss v. Castro*, 816 F.3d 910,0920 (7th Cir. 2016)).  Similarly, the VA's initial failure here to provide Ms. Brown with her requested accommodation does not support an inference of "severe or pervasive" harassment.

The remaining evidence designated by Ms. Brown that could support an inference of harassment consists of the January 22, 2014, statements attributed to Ms. Lima and the disclosure of Ms. Brown's medical information to her supervisors.  Dkt. 44 at 42; dkt. 39-1 at 52 (Brown Dep.); dkt. 39-17 (February 10, 2014 letter).[4]  Ms. Lima is alleged to have said that Ms. Brown's

---

[4] Ms. Brown also references the "VA's request for unnecessary medical documentation" to support her hostile work environment claim, dkt. 44 at 42, but she does not designate evidence or explain which request she is referring to.  To the extent she is

disability "doesn't matter" and that Ms. Lima "doesn't owe [Ms. Brown] anything." Dkt. 39-1 at 52 (Brown Dep.). While these comments may have been inappropriate and upsetting to Ms. Brown, without more they were an "isolated incident" that cannot itself support a hostile work environment claim. *See Ford*, 942 F.3d at 856–57; *Passananti*, 689 F.3d at 667–68.

Last, as discussed in greater detail in section III.C, the designated evidence shows that the other individuals copied on Ms. Lima's letter denying Ms. Brown's reassignment request were within her chain-of-command. Dkt. 39-17 (February 10, 2014 letter); dkt. 39-6 (VA organizational chart); Dkt. 39-2 at 7 (Brown Tel. Aff. at 26–27). And Ms. Brown has not designated evidence showing that her medical information was disseminated more broadly or to any individuals outside of her chain-of-command. The evidence designated by Ms. Brown does not support the inference that she was subjected to "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ford*, 942 F.3d at 851.

The VA's motion for summary judgment on this claim is **granted.**

### C. Unlawful Disclosure of Medical Information

Ms. Brown claims that the VA violated the confidentiality requirements of the Rehabilitation Act when a supervisor, Ms. Lima, sent copies of a letter

referring to the VA's request for information about her medical condition in response to her February 24, 2014, accommodation request, dkt. 39-19, this cannot be construed as "harassment," dkt. 39-22 (email requesting medical information in support of accommodation request).

containing Ms. Brown's health information to three VA employees.  Under the Rehabilitation Act, an employer must treat any "information obtained regarding [an employee's] medical condition or history . . . as a confidential medical record, except that . . . supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations." 42 U.S.C. § 12112(d)(4)(C) (incorporating 42 U.S.C. § 12112(d)(3)(B)(i)); *see* 29 U.S.C. § 791(f).  To succeed on a § 12112(d)(4)(C) claim, a plaintiff must show that the defendant (1) "obtained [the plaintiff's] medical information through employment-related medical examinations and inquiries"; (2) did not treat that information as confidential; and (3) caused the plaintiff to "suffer[] a tangible injury as a result of the disclosure." *Foos v. Taghleef Indus., Inc.*, 132 F. Supp. 3d 1034, 1050 (S.D. Ind. 2015); *E.E.O.C. v. Thrivent Fin. for Lutherans*, 700 F.3d 1044, 1048 (7th Cir. 2012).

The VA argues that it is entitled to summary judgment on Ms. Brown's unlawful disclosure claim because the letter was issued in response to Ms. Brown's request for reassignment rather than a request for accommodation. Dkt. 40 at 26.  The VA also argues that it did not "disseminate Ms. Brown's medical information farther than necessary" because the three VA employees

22

who were copied on the letter were managerial employees who needed to know the outcome of Ms. Brown's Reassignment Request.[5]  *Id.* at 27.

Ms. Brown responds that the VA obtained her medical information through an employment related medical inquiry and was therefore obligated to treat it as confidential.  Dkt. 44 at 45–46.  Further, there were no restrictions or accommodations of which the managerial employees needed to be informed. *Id.* at 44–45.

The VA does not cite authority to support its argument that the Rehabilitation Act only covers disclosures of medical information related to a request for accommodation.  *See id.* at 26.  The relevant statute refers to "inquiries into the ability of an employee to perform job-related functions," 42 U.S.C. § 12112(d)(4)(B), and specifies that any information obtained through such an inquiry is subject to the ADA's confidentiality requirements, *id.* § 12112(d)(4)(C).  Therefore, it does not matter that the VA obtained Ms. Brown's information through her reassignment request instead of through a formal request for accommodation.  *Cf. Wright v. Illinois Dep't of Child. and Fam. Servs.*, 798 F.3d 513, 522 (7th Cir. 2015) ("All employees, regardless of whether they have a disability under the ADA, are protected under [§ 12112(d)(4)(A)].").

The VA maintains that, even if the information was protected, the disclosure was authorized by statute because it was necessary to inform the

---

[5] The VA also briefly argues that Ms. Brown has not offered evidence that she suffered a "tangible injury."  Dkt. 45 at 14–15.  This argument was raised for the first time in the VA's Reply Brief, *id.*, and is therefore waived, *Harris v. Warrick County Sheriff's Dept.*, 666 F.3d 444, 448 (7th Cir. 2012).

managerial employees of the outcome of Ms. Brown's reassignment request. Dkt. 40 at 27. ("These individuals had a need to know as to the outcome of Ms. Brown's [reassignment request].").  The exception under subsection (d)(3)(B)(i) permits disclosure of medical information to managerial employees if it's related to "necessary restrictions on the work or duties of the employee and necessary accommodations."

Here, Ms. Lima's disclosure does not relate to a restriction on Ms. Brown's work or duties or a necessary accommodation.  As the VA explains several times, the managerial employees needed to know the "outcome" of Ms. Brown's Reassignment Request.  Dkt. 39-17 at 1.  Yet, because that outcome was a denial, a reasonable jury could determine that there was no "necessary restriction" or "accommodation" of which they needed to be informed.  42 U.S.C. 12112(d)(4)(C).  *Compare Foos*, 132 F. Supp. 3d at 1050–51 (finding that § 12112(d)(4)(C)'s exception covered employer's disclosure of plaintiff's alcohol related diagnosis to his supervisors because employer believed plaintiff's issue with alcohol consumption presented safety risk due to the "dangerous nature of [plaintiff's] job") *and Stark v. Hartt Transp. Systems, Inc.*, 37 F. Supp. 3d 445, 474 (D. Me. 2014) (finding that disclosure of medical information did not fit

within relevant exception because the disclosing body "noted no restrictions and no need for any accommodation").

Therefore, the VA's motion for summary judgment on Ms. Brown's unlawful disclosure claim is **denied**.

**IV.**
**Conclusion**

The VA's motion for summary judgment is **GRANTED** as to Ms. Brown's hostile work environment claim and **DENIED** as to her claims for failure to accommodate and unlawful disclosure of confidential medical information. Dkt. [39].

Magistrate Judge Dinsmore is asked to hold a status conference to discuss settlement and trial readiness.  The Court will set this case for trial in due course.

**SO ORDERED.**

Date: 5/24/2022

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Denise M. Clark
CLARK LAW GROUP, PLLC
dmclark@benefitcounsel.com

J. Taylor Kirklin
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
taylor.kirklin@usdoj.gov